HERGET, Judge.
Relatrix, Helen Hampton, instituted ha-beas corpus proceedings against respondents, Warner and Blanche McElroy, to obtain the care and custody of her child eleven years of age at the time the case was tried in the Court below. The Trial Court rejected the demands of Relatrix and awarded the permanent care and custody of the minor child to Respondents. The case was tried in the Court below on February 8, 1960 by Honorable Woodrow W. Overton and on November 9, 1960 Judge Overton handed down written reasons for judgment awarding the custody of the child, Melvina Hampton, to Respondents. However, prior to the signing of a formal judgment Judge Over-ton died and Judge Horace R. Reid was assigned to the District, who, by consent of all parties, permitted a reargument before him of the case and on June 2, 1961 judgment was rendered by him in open court and read and signed in open court on the 26 day of June, 1961 in accordance with the late Judge Overton’s written reasons wherein Relatrix was denied the custody and control of the child and rendered in favor of Respondents Warner McElroy and Blanche McElroy granting to them the permanent care, custody and control of the child Mel-vina Hampton, from which judgment Rela-trix appealed to this Court.
Relatrix, Helen Hampton, married Melvin Hampton on September 25, 1948 when they were thirteen and fifteen years of age, respectively. Melvina, their first child, the subject of the instant controversy, was born on March 11, 1949 and resided with her parents until she was two and a half years of age. At that time until the date of the trial, February 8, 1960, the child resided with Respondents, her aunt and uncle, except for occasional visits with her parents. During this period Relatrix and her husband resided in Greensburg, Louisiana while Respondents lived in Clinton, Louisiana. The child was voluntarily placed in the custody of Warner and Blanche McElroy by her parents and remained there during this entire eight year period with the full knowledge and consent of Relatrix and her husband. After Mel-vina had been placed in the custody of Respondents, Relatrix and her husband had six other children ranging in age at the time of the trial from six months to eight years of age. On December 6, 1959 Melvin Hampton was killed in a train wreck and two months thereafter Relatrix instituted these proceedings. Shortly after the death of her husband and prior to filing this suit Relatrix moved with her other six children to New Orleans where she and the children presently reside with Relatrix’s parents and from testimony elicited on the trial of the case another sister of Relatrix was also living with her parents in a five-room apartment including kitchen and bath and two bedrooms.
The evidence reveals that respondent, Blanche McElroy, is a schoolteacher with seventeen years experience in the Parish of East Feliciana, and respondent, Warner McElroy, is self employed; that they own their own home; that they now have a child of their own who was four and a half years of age at the time of the trial; that Melvina has regularly attended school and has attained a high scholastic average; *668 that she attends Sunday-school regularly and is in excellent health; thus it is without question that Melvina is how in good hands. The evidence further reveals that Respondents have been supporting the child and taking care of her needs in their home with no assistance whatever from Relatrix or her husband.
Following the death of her husband, which resulted from a collision between his automobile and a train, Relatrix instituted a civil suit for damages because of his death and Respondents suggest that the desire to have custody of Melvina now placed in her springs from a motive to increase the award for damages which she seeks in said civil suit.
In State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, the Court decreed that a parent by his conduct can forfeit his parental right to the custody of his child.
We believe the factual situation in this case to be similar to that which existed in the case of State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228, wherein in 1948 it having been determined that Mrs. Paul, the mother of Shirley Rae Paul, had contracted pulmonary tuberculosis and was advised that her condition would require hospitalization for a continued period requested her sister-in-law, Mrs. Peniston, who at that time was living with her husband and who had no children of her own, to take care of the child Shirley Rae. The Court observed that there was a conflict as to the exact arrangement entered into for placing the child with the Penistons; Mrs. Paul maintaining that she left the child with the Penistons only temporarily until she recovered and returned home, and the Penistons maintaining that they were to have the permanent custody. The evidence revealed that in May of 1950 Mrs. Paul, the mother, was released from the hospital, returned to her home and had led a normal life continuously for a year after leaving the hospital, despite which fact the Pauls allowed Shirley Rae to remain in the custody of the Penistons until September of 1957 when the habeas corpus proceeding was filed. The Court concluded' that the Pauls had abandoned the child and though recognizing the right of the parent to the custody of the child to be paramount, such abandonment constituted a forfeiture-of such right and, accordingly, denied re-latrix the custody of the child and permitted the child to remain with respondents. In Judge Tate’s concurring opinion in the-cited case he expressed the view that, though there was some doubt that the parents actually intended to abandon the child' to the aunt and uncle with whom she was-left when the family was in desperate straits — such being a passive separation of parents and child forced by circumstances —upon the failure of the parents to seek the return of the child to them following the recovery of Mrs. Paul but to permit instead the child to remain with the Pen-istons was active neglect of their parental duties with regard to the child which could' be considered a forfeiture or abandonment of their right to the child.
Similarly, it could be argued at the date Melvina was left with Respondents the parents were young, immature, without economic status and the child was left with Respondents only as a temporary measure; however, from the fact that subsequent to leaving the child with Respondents Relatrix and her husband had six more children it would appear that except for their intent to forfeit parental care and custody of the child and abandon same to Respondents there was no valid reason from an economic view of their not seeking the return of their child, Melvina.
In State v. Knight, La.App., 135 So.2d 126, we said at page 130 in referring to the Peniston case, supra:
“ * * * Our interpretation of the decision is that it simply holds that, in the event of abandonment by a parent over a long period of time, custody of foster parents will not be disturbed in a contest between the natural parents and foster parents equally capable *669 of caring for the child on the theory the best interest and welfare of the child are served by permitting custody to remain in the status quo under such circumstances. * * * ”
From the record it thus appears that Melvina was placed in Respondents custody voluntarily by Relatrix and her husband and allowed to remain therein for a period of more than eight years without any effort being made to seek the return of the custody of the child by Relatrix or her husband in the intervening period; that Respondents are well able to and are giving the best of attention to said child; that the child is happy in her surroundings; that her moral and physical condition is excellent; that such action on the part of Relatrix and her husband for a period of eight years constitutes a forfeiture of Re-latrix’s parental right to the custody of the child as found by the Trial Judge, which findings are entitled to great weight where the judgment, as in this case, is based upon the facts disclosed in the record.
Accordingly, for these reasons, the judgment appealed from is affirmed at Rela-trix’s costs.