CULPEPPER, Judge.
Plaintiff, as natural mother of the minor child, Debra Odelia Romero, about three years of age, seeks a writ of habeas corpus ordering Mr. and Mrs. Don E. St. Romain, who have had custody of the child for almost three years, to deliver said minor to plaintiff. After hearing on the merits, the district judge granted the writ of habeas corpus giving custody of the child to plaintiff, its mother. Defendants appealed.
The first issue relates to an exception of res judicata filed by defendants on the grounds that about seven weeks previous to the date of filing the instant petition for writ of habeas corpus the same district court denied a similar petition by plaintiff involving the same child, the same issues and the same parties and awarded custody to the St. Romains. We think our jurisprudence is settled that a judgment granting custody of children is always subject to modification by the court, when a change of circumstances demands it. See Gary v. Gary, La.App., 143 So.2d 411 (3rd Cir.App.1962) and the authorities cited therein. Defendants have cited no authority to the contrary. The exception must therefore be denied.
The second issue is whether the district judge erred in finding that it was to the best interest and welfare of the child that its custody be changed to its natural mother. The facts show that the plaintiff, born Mable Romero, first married Percy Benoit with whom she ceased living as man and wife in about 1957. Later she entered into a relationship with David Mouton, who was, at the time, also separated from his wife. Mouton is recognized as being the *892 natural father of the child whose custody is sought in these proceedings. The child was born December 31, 1959 and given the name, Debra Odelia Romero (its name was changed on January 25, 1960 to Debra Odelia Mouton).
A week or so after the child was bom it became ill and was placed in the hospital. Plaintiff herself was suffering from some sort of nervous disorder at the time and was under the care of a psychiatrist. In February of 1960, at which time the child was only about two months old, plaintiff signed a document giving custody of the child to the defendants. The understanding was that the defendants would pay the child’s hospital bill and receive its custody. Plaintiff testified that it was not her intention to permanently abandon the child or to surrender it for adoption and the only reason she gave custody to the defendants was because she was destitute, could not care for the child, and it was suggested by her psychiatrist that she give the child to someone else. The St. Romains were complete strangers to plaintiff and already had three other adopted children.
In April of 1960 the St. Romains filed a petition for adoption of the child and an interlocutory decree of adoption was signed in due time. Then in December of 1961 the St. Romains filed a petition for final decree of adoption and it was at this time that the mother of the child made known to the court the fact that she did not consent to the adoption. The mother contends, and it is not denied, that she had actually been trying to regain custody of her child since before the interlocutory decree was signed.
Although the St. Romains were denied a final decree of adoption, they retained custody of the child. In September of 1962 Mable Romero filed her first petition for a writ of habeas corpus to obtain custody. The matter was heard on September 24, 1962. At the hearing the evidence showed that Mable Romero had actually been living with Mr. David Mouton in his house for over a year and had moved from Mouton’s house only about a week before the hearing. The evidence also showed that the plaintiff had suffered a mental disturbance of some nature, that she had moved about considerably, working in various places as a waitress in cafes and bars and generally manifested a rather unstable nature. The court was at that time not satisfied that Mable Romero was fit for the custody of her child. The child was left in the custody of the St. Romains.
Following the first hearing, Mable Romero and David Mouton were married on October 9, 1962. She filed this second' petition for a writ of habeas corpus on November 16, 1962 and it was heard on December 17, 1962. At the hearing the marriage of plaintiff and David Mouton was proved. It was also shown that Mr. Mouton is well able to care for plaintiff and her child and that Mr. Mouton intends to adopt the child. Mouton has already filed a petition to adopt plaintiff’s other child, a boy five years of age, by her first marriage.
At the conclusion of the hearing the district judge, in a well reasoned written opinion, summarized his impression of the facts as follows:
“At the previous hearing I concluded the respondents had established that the relatrix was living with Mr. Mouton under circumstances which certainly were not conducive to the moral upbringing of the child, and that her move to Midland was only a temporary expedient. This, and also the fact that the relatrix admitted she had undergone treatment by a psychiatrist for a mental condition — and there was some other evidence that her mental condition was such that the best interest of the child would not be served by living with her —in light of all other circumstances, caused me to decide that the best interests of this young girl would be served by allowing her to remain in the custody of Mr. and Mrs. St. Romain.
*893 "I am still inclined to believe that Mr. and Mrs. St. Romain can provide a better home for this child than Mr. and Mrs. Mouton. I think it is obvious that Mrs. Mouton has to some extent led an immoral life in the past, that she has not demonstrated any great interest in the welfare of her children, and that although her relationship with Mr. Mouton has now become ‘legalized,’ so to speak, nevertheless she is married to a man considerably older than she, and considerably older than is generally the age of parents of three year-old children. However, the fact remains that this is the child of Mrs. Mouton. The immoral aspect of her home situation, if any existed at the time of the previous hearing, appears to have been removed by her marriage to Mr. Mouton. And although Dr. Funk was not called to testify in this case, the Court has no reason to disbelieve Mrs. Mouton’s testimony that she has been released and discharged by the doctor.
“Under the circumstances, I do not feel that the respondents have borne the burden of proving that the mother of this child is so unfit at the present time as to be unable to provide a proper home for the child even though their own home might appear to be better than the one that Mrs. Mouton will have for the child. Therefore, I am compelled to order that the child be returned to the custody of its mother, Mrs. Mabel Mouton.”
Although the trial judge did not mention it in his written opinion, we gain the impression, from some of the questions which he himself asked at the hearing, that he also considered the fact that the St. Romains, who had custody, might never be able to adopt this child because of the refusal of consent by its mother. This would indeed be a factor affecting the best interest and welfare of the child.
As noted by the trial judge, the applicable principles of law are succinctly set forth in State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740 as follows:
“The rule in this state seems to be clear that the mother has a superior right to the custody of her child over third persons, but that this right must yield to the superior right of the State to deprive her of the care and possession of her child in the event the physical, mental, and moral welfare of the child requires it. (citations omitted)
* * * * * *
“The rule set out hereinabove, that is, that the welfare of the child is of paramount importance in determining who is entitled to custody of the child, has consistently been followed by the courts of this state.” (citations omitted)
In the more recent case of State ex rel. Mouton v. Williams, 222 La. 457, 62 So.2d 641, the applicable law is stated as follows:
“It is well settled in our jurisprudence that a mother has a right to the custody of her child as against third persons, but that this right must yield to the superior right of the State to deprive her of such custody and possession in the event she is morally, mentally, or otherwise unfit and the welfare of the child requires it.
“We have given our most careful consideration to all the evidence in the record before us, and we find that the child is in good health, happy, contented, and well adjusted in her school and social life. These circumstances would not, however, justify our depriving the mother of her right to her child if the mother is not unfit and the child’s future welfare can be served by placing her in the mother’s care.”
We, like the district judge, find this a very difficult case. The immoral life led *894 by plaintiff in the past certainly is a serious factor and if that life had been continued would render her unfit for the custody of this child. However, plaintiff married Mr. David Mouton, soon after he obtained his final divorce from his previous wife, and that has removed the most serious objection to plaintiff’s moral fitness. It would certainly be preferable if plaintiff had demonstrated a longer period of fitness and stability since her marriage to Mr. Mouton. But on the other hand, if custody of the child is to be changed it should be done as soon as possible while the child is still of tender years.
Insofar as our decision of this matter is concerned, the scales are tipped by our great reluctance to upset the holding of the trial judge in cases of this type. See Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Decker v. Landry, 227 La. 603, 80 So.2d 91. This rule of law is stated in State v. Watson, supra, as follows:
"“This court, in reviewing decisions of the lower courts involving the custody of children, has said that reasonable latitude must be left to the trial court in such cases, and that its views upon the facts surrounding any given case are entitled to great weight. State ex rel. Johnson v. Johnson, et al., 149 La. 89, 88 So. 698; Davis v. Willis et al., 169 La. 13, 124 So. 129; State ex rel. Castillion v. Jeunesse, 185 La. 845, 171 So. 51.”
See also the more recent case of State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8 (La.Sup.Ct.1955) in which our Supreme Court, by a 4 to 3 decision, decided the natural parents had abandoned the child and forfeited their rights to its custody. The majority and dissenting opinions set forth the law in detail, but, here again, the court finally affirmed the trial judge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellants.
Affirmed.