161 So.2d 737 (1964)
245 La. 839
Mable Romero MOUTON
v.
Don E. ST. ROMAIN et ux.
No. 46829.
Supreme Court of Louisiana.
February 24, 1964.
Rehearing Denied March 30, 1964.
Francis E. Mire, Lake Charles, for relators.
Nolan J. Edwards, Edwards & Edwards, Crowley, for respondent.
HAMLIN, Justice.
In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921, LSA), we directed Certiorari to the Court of Appeal, Third Circuit (244 La. 907, 154 So.2d 771), in order that we might review its judgment which affirmed a judgment of the trial court rendered December 17, 1962, making absolute a writ of habeas corpus and ordering that the custody of the minor Debra Odelia Romero be returned to Mable Romero Mouton by Don E. and Jo Ann St. Romain (La.App., 153 So.2d 890).
The facts of record have been ably stated by the Court of Appeal, and, for an understanding of our opinion, we reiterate the following:
"* * * the plaintiff, born Mable Romero, first married Percy Benoit with whom she ceased living as man *738 and wife in about 1957. Later she entered into a relationship with David Mouton, who was, at the time, also separated from his wife. Mouton is recognized as being the natural father of the child whose custody is sought in these proceedings. The child was born December 31, 1959 and given the name, Debra Odelia Romero (its name was changed on January 25, 1960 to Debra Odelia Mouton)
"A week or so after the child was born it became ill and was placed in the hospital. Plaintiff herself was suffering from some sort of nervous disorder at the time and was under the care of a psychiatrist. In February of 1960, at which time the child was only about two months old, plaintiff signed a document giving custody of the child to the defendants. The understanding was that the defendants would pay the child's hospital bill and receive its custody. Plaintiff testified that it was not her intention to permanently abandon the child or to surrender it for adoption and the only reason she gave custody to the defendants was because she was destitute, could not care for the child, and it was suggested by her psychiatrist that she give the child to someone else. * * *[1]
"In April of 1960 the St. Romains filed a petition for adoption of the child and an interlocutory decree of adoption was signed in due time. Then in December of 1961 the St. Romains filed a petition for final decree of adoption and it was at this time that the mother of the child made known to the court the fact that she did not consent to the adoption.[2] The mother contends, and it is not denied, that she had actually been trying to regain custody of her child since before the interlocutory decree was signed.
"Although the St. Romains were denied a final decree of adoption, they retained custody of the child. In September of 1962 Mable Romero filed her first petition for a writ of habeas corpus to obtain custody. The matter was heard on September 24, 1962. At the hearing the evidence showed that Mable Romero had actually been living with Mr. David Mouton in his house for over a year and had moved from Mouton's house only about a week before the hearing. The evidence also showed that the plaintiff had suffered a mental disturbance of some nature, that she had moved about considerably, working in various places as a waitress in cafes and bars and generally manifested a rather unstable nature. The court was at that time not satisfied that Mable Romero was fit for the custody of her child. The child was left in the custody of the St. Romains.
"Following the first hearing, Mable Romero and David Mouton were married on October 9, 1962. She filed this second petition for a writ of habeas corpus on November 16, 1962 and it was heard on December 17, 1962. At the hearing the marriage of plaintiff and David Mouton was proved. It was also shown that Mr. Mouton is well able to care for plaintiff and her child and that Mr. Mouton intends to adopt the child. Mouton has already filed a petition to adopt plaintiff's other child, a boy five years of age, by her first marriage."[3]
In affirming the judgment of the trial court and ordering the custody of Debra Odelia Romero returned to plaintiff, the Court of Appeal agreed with the trial judge *739 that the matter was a difficult one for decision. The Court, however, took into consideration its perception that the St. Romains, who had the custody of the child, might never be able to adopt her because of the refusal of consent by the mother; it concluded that the scales were tipped by its great reluctance to upset the holding of the trial judge in cases of this type. State ex rel. Hampton v. McElroy, La.App., 141 So. 2d 666; State ex rel. Hebert v. Knight, La. App., 135 So.2d 126; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740.
Relators urge that the Court of Appeal committed error:
1. In not holding that it was to the best interest and welfare of the child that she remain in the custody of defendants.
2. In refusing to upset the holding of the trial judge, even though "the court" felt that the mother was still morally unfit.
3. In not considering the fact that this was all caused by the mother's own actions in executing a notarial act of custody and right of adoption to the St. Romains.
4. In failing to consider the equities involved in this matter.
In State ex rel. Guinn v. Watson, supra, we held that the rule in this State seems to be clear that the mother has a superior right to the custody of her child over third persons, but that this right must yield to the superior right of the State to deprive her of the care and possession of her child in the event the physical, mental, and moral welfare of the child requires it. See, State ex rel. Castille v. Cooke, 183 La. 404, 164 So. 153; State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8.
In State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, we stated: "In such cases the sole question for the court's consideration is whether the parent by his or her conduct has forfeited his or her parental right to the child, for it is the well settled jurisprudence of this state that the courts are not authorized to interfere with a parent's authority over his or her children, except if the court is satisfied that he, or she, will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them, * * * and the burden is on those resisting the parent's right to show his or her disqualification or unfitness to have the custody of the child. * * *" See, State ex rel. Paul v. Peniston, 235 La. 579, 105 So. 2d 228; State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422.
Fully cognizant of the fact that the trial judge rendered the present judgment on December 17, 1962 and that on October 4, 1962 he rendered and signed a judgment in the same matter vacating and annulling the writ of habeas corpus previously issued, and being aware of the rule that a judgment of custody is not irrevocable but is subject to modification, alteration, change or reversal (Gary v. Gary, La.App., 143 So.2d 411), we approach a determination of whether Mable Romero Mouton is entitled to have a change in the custody of her daughter and whether Debra Odelia Romero's welfare will be best served by such change.
"* * * while that award is not irrevocable, * * * being subject to modification at any time when a change of conditions demands it, it is incumbent upon the party requesting the modification to prove that the conditions under which the children are living are detrimental to their interests and further that the applicant can and will provide a good home and better environment if given their custody." Decker v. Landry, 227 La. 603, 80 So. 2d 91. See, Gentry v. Gentry, La.App., 136 So.2d 418.
We find that plaintiff has always evinced a motherly interest in her daughter. Her *740 testimony to the effect that when she gave the initial custody of her daughter to the St. Romains she was under the treatment of a psychiatrist who recommended that she give up her daughter at that time is uncontradicted; also uncontradicted is her testimony that she was discharged by her psychiatrist between September, 1962 and December, 1962. Plaintiff testified that she had married David Mouton, and she offered proof that such marriage took place in Orange, Texas, on October 9, 1962, when she was visiting her aunt. She stated that she was willing and able to care for her daughter and would make a proper home for her, together with her husband, David Mouton.
David Mouton testified that he had been in the hardware and appliance business for sixteen years; that he had his business up for sale and contemplated engaging in another enterprise around Lafayette, Louisiana. Mouton affirmed that he married Mable Romero on October 9, 1962, and stated that he was fifty-five years of age and that she was thirty. Mouton further testified that he had an eight room and bath home in which he, and plaintiff and her son, were living, and that he had obtained an interlocutory decree of adoption of the boy; that he was financially able and willing to take care of Debra Odeliahis intention being to adopt her and raise her and the boy as brother and sister. He was of the opinion that there was nothing wrong with his wife.
The testimony of Mr. and Mrs. St. Romain at the first hearing was uncontradicted and affirmative to the effect that they could furnish the instant minor an ideal home and would love and treat her as their daughter. In resisting Mable Romero's efforts to obtain the custody of her daughter, the St. Romains bore their burden of showing her disqualification or unfitness at that time to have the custody. State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422.
We find that the St. Romains are substantial people and ideal citizens of their community; they are religious and participate in several worthwhile activities; they are educated and are engaged in the operation of a lumber yard.
"* * * A mother who is morally fit to rear her child in a decent, wholesome environment, who is capable of making reasonable provision for the child's physical welfare and who has not forfeited her natural, inherent right to custody by clearly abandoning or rejecting the child, may not be denied return or restoration of custody merely because a party or parties to whom the child was temporarily entrusted may be capable of providing the child greater monetary and material benefits." State ex rel. Hebert v. Knight, La.App., 135 So.2d 126.
At the second hearing, in December, 1962, the position of the St. Romains had not changed; but, they were unable to prove any disqualification on the part of plaintiff between the first hearing and the second hearing, and they did not contradict the testimony of plaintiff and her witnesses who expounded the changes that had taken place in her life.
We conclude that at the second hearing, plaintiff, Mable Romero Mouton, bore her burden of proving that the moral, physical, and mental welfare of her daughter would not be affected by a change of custody. She asserted the superior right of a mother, and we do not find that this right must now yield to the right of the State to deprive her of the care and possession of her child. At the time of the second hearing, plaintiff's evidence was affirmative that the future welfare of her minor daughter would not be affected by a change in custody. We agree with the conclusion of the Court of Appeal that, "It would certainly be preferable if plaintiff had demonstrated a longer period of fitness and stability since her marriage to Mr. Mouton. But on the other hand, if custody of the child is to be changed it should be done as *741 soon as possible while the child is still of tender years."
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs are to be paid by relators.
HAWTHORNE, J., dissents with written reasons.
HAWTHORNE, Justice (dissenting).
The mother in this case, in my opinion, has forfeited any right she may have to the custody of her three-year-old child. She separated from her husband, and thereafter lived in open adultery with an unnamed man. The child was born out of wedlock in December, 1959, after the mother's divorce from her first husband; it is admitted that a man named Mouton is the natural father. In 1961 she commenced to live in open adultery with Mouton, and this relationship continued for approximately one year, that is, until about a week before the hearing of her first suit to regain custody of the child. In September, 1962, the trial judge after a hearing refused to award the mother custody of the child. Almost immediately she married Mouton, and a few weeks later instituted the instant proceeding.
The trial judge in his reasons for judgment stated: "* * * I think it is obvious that Mrs. Mouton has to some extent led an immoral life in the past, that she has not demonstrated any great interest in the welfare of her children, and that * * * her relationship with Mr. Mouton has now become `legalized,' so to speak * * *." He awarded the mother custody, however, in view of the fact that, a short time before institution of this proceeding and soon after her first suit had been dismissed, she married Mouton.
If the trial judge was correct in the first suit in denying the mother custody of this child, and I think he was, I do not think that her marriage to Mouton after that suit was dismissed made her morally fit or, in other words, "washed her sins away". It is my opinion that she has been shown to be morally unfit to have the custody of this child, and to me it has been conclusively established that it is to the best interest of the child for her to remain with the foster parents.
The Court of Appeal, 153 So.2d 890, affirmed the district court, Judge Tate dissenting with written reasons concurred in by Judge Savoy. I am in full accord with the view given by Judge Tate in his dissent and recommend that his dissent be read by anyone who may be interested. The majority of the Court of Appeal affirmed the district court principally on the ground that it was reluctant to upset the holding of the district court in a case of this type. To me considerations of the child's welfare should overcome any reluctance to reverse the district court.
NOTES
[1] The St. Romains already had three children; Mrs. St. Romain testified that one was born of the marriage and two were adopted.
[2] Cf. LSA-R.S. 9:429.
[3] For summarized impression of the facts by the trial judge, see 153 So.2d 890, 892-893.