CULPEPPER, Judge.
This is a dispute between the father and the mother for custody of a child. The trial judge awarded custody to the father. The mother appeals.
The facts show that plaintiff and defendant were married in 1949 and established their matrimonial domicile in Jennings, Louisiana, where defendant is a prominent physician. By September of 1962 there were eight surviving children of this marriage, ranging in age from about one year to about thirteen years. However, over the years plaintiff and defendant apparently had experienced increasing marital diffi *72 culties. Mrs. Brunt contends they became incompatible and that the doctor had fits of temper and beat her physically. The doctor contends that his wife started running around with other men, staying out late at night without any explanation as to her whereabouts and over indulging in intoxicating liquors. These events climaxed in 1962 when Mrs. Brunt was admittedly “seeing” a younger man named Robert Reynolds. The doctor learned of this affair and demanded that she choose between him and Reynolds. Mrs. Brunt chose Reynolds, and actually left home with Reynolds on September 22, 1962 for the avowed purpose of divorcing Dr. Brunt and marrying Reynolds. She left all eight of her children, two or three of whom were still infants, with Dr. Brunt.
On September 28, 1962 Dr. Brunt filed suit against his wife for divorce on the grounds of adultery. His petition alleged “ * * * that said defendant and Reynolds are living together as husband and wife in or near the city of Lake Charles, Louisiana.” and further that “ * * * since defendant has been unfaithful to her marriage vows and has committed acts of adultery with the said Robert Reynolds, * * * ” he was entitled to an absolute divorce. Dr. Brunt also alleged that his wife was unfit for the custody of the children and asked that he be awarded their permanent care.
On October 10, 1962 Mrs. Brunt, through her own counsel, filed an answer to the divorce petition, in which she admits the allegations that she had lived together with Reynolds as man and wife and had committed acts of adultery with him. However, Mrs. Brunt denied that she was unfit for the custody of her children but stated that since she did not have a place nor the means to care for them she agreed it was for their best interest to stay with Dr. Brunt.
The divorce case was heard on December 18, 1962 at which time there was filed in evidence a letter from Mrs. Brunt’s attorney agreeing that the matter could be taken up without the presence of either Mrs. Brunt or her attorney. The transcript of testimony taken at the trial of the divorce shows without question that before she left home on September 22, 1962, Mrs. Brunt had been seeing Reynolds and staying out with him late at night, but there is no proof of any specific acts of adultery before she left home. On said date of September 22, 1962 at about 8:00 p. m., at a time when Dr. Brunt and the three older children were absent, Mrs. Brunt packed all of her personal belongings and left in an automobile with Mr. Reynolds. They admittedly went to Beaumont, Texas, where they lived together as man and wife in an apartment. After hearing this evidence the trial judge granted a divorce to Dr. Brunt on the grounds of adultery and awarded him custody of the children.
Soon after the divorce Mrs. Brunt moved to an apartment in Lake Charles. On May 16, 1963, in a hospital in Lake Charles, she gave birth to the child whose custody is sought in these proceedings. On June 7, 1963 Mrs. Brunt filed the present suit against Dr. Brunt for expenses of the birth and $500 per month alimony for support of the child, as well as permanent custody. Dr. Brunt answered, admitting paternity of the child, but filed a reconventional demand for custody on the grounds that Mrs. Brunt is an unfit mother. At the trial of these issues on June 19, 1963, the entire previous divorce proceedings were filed in evidence. Further evidence introduced, with reference to the issue of the moral fitness of Mrs. Brunt, showed: Since the date of the divorce in December of 1962, she had continued to see a great deal of Robert Reynolds. She testified she still “loves” Reynolds and intends to continue seeing him, but she is uncertain whether she is going to marry him. She denied any acts of adultery with Reynolds since the date of the divorce and there is no proof of any specific such acts since that time. A police officer testified as to an incident which occurred during the summer of 1962 when he was requested one night by Dr. Brunt to try to *73 find Mrs. Brunt to go home and take care of the children. The officer said he found Mrs. Brunt in a bar with Reynolds in an intoxicated condition and, when advised that the doctor wanted her to go home and see about the children, she stated “I had them. Hell, let him take care of them.” The officer also testified he had seen Mrs.1 Brunt and Reynolds together late at night several times.
Mrs. Sarah Kelly, Dr. Brunt’s housekeeper, who helps care for the children, testified that since Mrs. Brunt had left home in September of 1962 she had talked to Mrs. Brunt on the telephone from both Beaumont and Lake Charles, and from these conversations she understood that Mrs. Brunt and Reynolds were living together and were going to be married.
At the conclusion of the hearing the trial judge rendered written reasons, reading in part as follows:
“It is this Court’s opinion that the effect of the December 1962 judgment of divorce whereby the eight living children were placed in the custody of their father Dr. Charles D. Brunt, was to declare that Mrs. Lildred Ruth Brunt was an unfit parent and to declare that Dr. Brunt was a proper parent. Melvin Gary v. Louella Gary, [La.App.], 143 So.2d 411.
“There having been no evidence submitted at the trial of this rule to show that Dr. Brunt is not a proper parent, it is this Court’s opinion that Dr. Brunt is entitled to have custody of the infant child conceived during his marriage but born 145 days subsequent to the dissolution of the marriage.
“Furthermore, the evidence is conclusive to the effect that Dr. Brunt, a physician and surgeon, is imminently qualified to care for his infant child; that the infant is not breast-fed; that his sister is presently living in his home and properly rearing all of the children; and that Mrs. Brunt is satisfied that Dr. Brunt’s sister is as well qualified to care for the children as anyone excepting the'children’s mother. In addition Dr. Brunt has a maid to assist his sister in the care of the children, and household work.”
The first argument made by counsel for Mrs. Brunt in this court is that the trial judge placed undue reliance on the the case of Gary v. Gary, La.App., 143 So.2d 411 (3rd Cir.App.1962, writ of certiorari denied). In that case we held a party seeking a change in a previous custody order has the burden of showing that because of material changes, which have occurred since the initial decree, the best interest and welfare of the child require a revision of the previous custody order. See also Gentry v. Gentry, La.App., 136 So.2d 418 (1st Cir.App.1962); Hanks v. Hanks, La.App., 138 So.2d 19 (1st Cir.App.1962, writ of certiorari denied); Decker v. Landry, 227 La. 603, 80 So.2d 91.
Counsel for Mrs. Brunt contends that Gary v. Gary, supra, has no application here, because the child whose custody is at issue in these proceedings had not even been born at the time of the previous decree granting custody of the eight children to Dr. Brunt. We agree that as to this child, born after the previous custody decree, this is an initial custody dispute between the mother and the father and not an attempt to modify or change a previous custody ruling. However, we think it was proper for the trial judge to consider the entire divorce proceedings, which had occurred only six months before, along with the other evidence introduced at the present custody hearing, in determining what is for the best interest and welfare of this child. After all, the welfare of the child is the overriding concern in all of these cases. Certainly the district court was not restricted to evidence of events which occurred after the divorce as counsel contends. We think it is actually immaterial in the present case whether this be considered an initial custody hearing, or a suit to change custody be *74 cause, in view of all of the facts disclosed in the divorce proceedings, together with the evidence introduced at the hearing of this custody rule, the trial judge was fully justified in concluding that the mother is unfit-and that the best interest of the child will be served by awarding its custody to Dr. Brunt.
We recognize the well established rule that the mother has the primary right to the custody of her child and will not be deprived thereof unless proven unfit or unable to care for them. Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456. We also recognize the jurisprudence which has held that a few secretive acts of adultery by a mother who is otherwise well suited to care for her children, may not be sufficient to show that she is morally unfit for custody. McCaa v. McCaa, 163 So.2d 434 (2nd Cir.App.1962); Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311; Messner v. Messner, 240 La. 252, 122 So.2d 90; Bush v. Bush, 144 So.2d 119 (4th Cir.App.1962).
However, there is a great deal more evidence in this case of Mrs. Brunt’s unfitness than simply a few secretive acts of adultery. Mrs. Brunt lived in open adultery. She freely admitted this. It is public knowledge that she ran off with Robert Reynolds and lived with him. It is true there is no proof of any specific acts of adultery between the time of the divorce in December of 1962 and the time of the custody hearing in June of 1963, but the evidence that during this six months period Mrs. Brunt continued to see a great deal of Reynolds, that she still “loves” him and intends to continue to see him, but does not know whether she is going to marry him, could have certainly caused the trial judge grave concern that this relationship might adversely affect the welfare of the child.
Furthermore, we think very strong evidence of her unfitness is the admitted fact that she ran off with her paramour and left her eight children, the youngest two or three of whom were still infants. This showed a serious lack of concern for her children in addition to being a highly immoral act. The trial judge was not impressed, and we likewise are not impressed, with her lame excuse that she couldn’t take the children because she didn’t have a place to keep them. These are simply not the actions of a suitable mother. As the doctor said on the witness stand, “Actions speak louder than words.” It is important to remember that all of this occurred within about eight months previous to the custody hearing. Certainly it was reasonable for the trial judge to conclude that Mrs. Brunt had not changed her ways in so short a time.
A final strong factor in our decision is the great discretion which must be allowed the trial judge in cases of this type. He is undoubtedly in a better position than we, who see nothing but the cold record, to give proper weight to all of the circumstances and determine what is for the best interest and welfare of this child. Mouton v. St. Romain, 245 La. 839, 161 So.2d 737; State ex rel. Hampton v. McElroy, La.App., 141 So.2d 666, State ex rel. Hebert v. Knight, La.App., 135 So.2d 126; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740.
For the reasons assigned the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.