175 So.2d 25 (1965)
Cyril Lloyd ACOMB
v.
Mrs. Adrienne BILLEITER.
No. 1831.
Court of Appeal of Louisiana, Fourth Circuit.
May 3, 1965.
*26 Jacob H. Morrison, New Orleans, for plaintiff-appellee.
Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, for defendant-appellant.
Before YARRUT, CHASEZ and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
This case is before us on appeal by the respondent, maternal grandmother of two little girls, from a judgment of the District Court for the Parish of Orleans, in a habeas corpus proceeding initiated by their father, ordering the return of the children to his custody.
Cyril Lloyd Acomb, who was thirty-six years old at the time of trial, a graduate of Louisiana State University in mechanical engineering, was married to Betty Ann Billeiter on November 14, 1955, after his first marriage ended in divorce in 1954. Of his second marriage a daughter, Kathleen, was born September 26, 1956, and daughter, Dorothea, was born May 10, 1959. In February, 1961, Mr. and Mrs. Acomb were separated and she filed a suit for separation. Apparently no judgment was rendered in this proceeding, but in February, 1963, Mr. Acomb obtained a decree of divorce. Mrs. Acomb was awarded custody of the children. Mr. Acomb visited the children regularly and made alimony payments except *27 during periods of unemployment. Mrs. Acomb lived with her children in the home of her mother, Mrs. Adrienne Billeiter who assisted her in the care of the children while she, Mrs. Acomb, was employed. There does not appear to have been the usual tense and bitter feeling between the estranged parents generally associated with cases of this nature.
Mrs. Acomb, the mother, died of a heart condition on May 10, 1964, and the children continued to live in the home of their grandmother, Mrs. Billeiter. Some time thereafter Mr. Acomb requested the return of the children to his custody. Following some attempt to agree on a method least upsetting to the children, Mrs. Billeiter refused to surrender them, and Mr. Acomb brought this habeas corpus proceeding.
Mrs. Billeiter filed no pleadings in the case but did appear in response to subpoena in opposition to the writ. From a judgment ordering the children returned to their father, Mrs. Billeiter perfected this appeal.
The issue, simply stated, concerns the mental and emotional stability of Mr. Acomb and his fitness on that account to be entrusted with the care of his children. Respondent's attorney concedes in his brief that at present the plaintiff-relator is in an apparently normal condition, which was emphasized by the trial judge. He bases his argument on the fear that Mr. Acomb will have a relapse into his prior state of mental illness, thus endangering the safety and well-being of the children if they are returned to his custody.
The record reveals that Mr. Acomb suffered a service-connected mental illness and was admitted to De Paul Sanitarium in January, 1954, with a diagnosis of "schizophrenic reaction, paranoid type, acute", being "withdrawn and depressed". The prognosis was "quite guarded" and he was transferred to the Veterans Hospital. Notwithstanding the implications one might draw from the "guarded prognosis", he was discharged in May, 1954. In March, 1956, he was readmitted to the Veterans Hospital for a six-week period with the same symptoms and again discharged on May 8, 1956. Since then he has had no further hospital care, but was under treatment of Dr. Jacob Weisler for two weeks in March, 1959, being then "depressed and withdrawn". Dr. Weisler has had some consultations with Mr. Acomb since 1959.
For the last three years relator has been regularly employed, but for a long time prior thereto his employment record was very irregular. At present he is earning $600.00 per month.
Dr. Weisler's testimony that Mr. Acomb is not presently in a state of mental illness and not subject to recurrence likely to pose a threat to the safety and well-being of his children in his custody, is unequivocal and quite convincing.
The trial judge out of an abundance of precaution, and with a desire to protect the children from any probable harm, appointed Dr. William P. Super, a psychiatrist, to make further examination of Mr. Acomb. Dr. Super reviewed the hospital records and agreed that on the basis of the information disclosed by them Mr. Acomb was at that time suffering "from a schizophrenic reaction of the paranoid type with a kind of thought processes which are very typical of this condition, which included delusions, persecution, hallucinations" and that when transferred from De Paul to Veterans Hospital was "actively psychotic". However, he responded to treatment and was discharged.
He described Mr. Acomb as a man of "considerable intelligence" but one who has difficulty thinking "abstractly". He said: "However, it does not mean that he can't function successfully outside of a hospital or at work or in a domestic situation. There were no indications that he couldn't function at this time quite satisfactorily." Further he said, "from a psychiatric viewpoint alone, I see no reason why he couldn't successfully take care of his children." He *28 described Mr. Acomb as "considerably better than many, many patients who were [are] discharged from the hospital to return to their families to take care of their children. He's in better condition than very many of those."
Mrs. Billeiter, the respondent, frankly admitted that she had no fear that their father would harm the children physically. She expressed the concern of a devoted grandmother for the happiness and ultimate well-being of her grandchildren. It is difficult, however, for one so wrapped up emotionally and being influenced by her own desire to have the companionship of those so dear to her, to be completely objective about the matter.
Mr. Acomb would of necessity be dependent upon his own mother to assist in the care of the children. She has an adequate home in a suitable neighborhood, and there is no inference whatever of her unfitness for this responsibility.
Since the only serious objection to return of the children to their father is the grandmother's fear of the possibility that their father might at sometime in the future have a recurrence of his mental illness, we must agree with the trial court that this is not sufficient reason to deny him his right as surviving parent to their custody. The testimony of the two psychiatrists is convincing that his present condition is stable and the probability of harm to the children is extremely remote. We must assume that should it ever become necessary, the court of proper jurisdiction will do its duty in the interest of the children.
We cannot agree with counsel for respondent who argues that the paramount right of a parent to his or her children is more sacred or entitled to greater weight when applied to the mother than to the father. In a contest between the mother and father, their natural and legal rights being equal, and assuming neither is morally unfit, the custody of young children is generally granted to the mother, since generally she is better able to serve their needs; but this does not mean that the mother has any greater right, legally or naturally. But in a contest between a parent and another person, only the parent has a legal or natural right to their custody; and in the absence of convincing proof of his unfitness or that the well-being of the children will be seriously endangered, his right must prevail.
The jurisprudence of this State is replete with authority in support of the foregoing statement. It would serve no purpose to cite the numerous cases so holding. A discussion of the paramount right of a parent to the custody, its limitations and exceptions with numerous citations, may be found in "Juvenile Laws of Louisiana, History and Development" published by the Louisiana Youth Commission in 1957, pp. 297-311. We think the following language of our Supreme Court in State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 (1926), is particularly pertinent here. The Court said at p. 413 of 108 So.:
"* * * The courts are not authorized to interfere with a parent's authority over his or her child except in cases where the physical or moral welfare of the child is endangered by neglect or abuse or vicious or immoral habits on the part of the parent. Act 79 of 1894, p. 91. The child's preference to live with some one else cannot prevail over the parent's authority to compel the child to live with him or her. * * * [Citing several cases.]

* * * * * *
"In the decisions which we have cited in support of the authority of the parent, the children's preference to live with those to whom they had become attached by long association and kind treatment was said to be an important consideration, but the children's preference in that respect has never prevailed *29 over the authority of worthy and capable parents."
The latest reaffirmation of the foregoing by our Supreme Court, as far as we know, is found in Mouton v. St. Romain, 245 La. 839, 161 So.2d 737, and State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964). The Court again cited with approval the well-known case of State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); State ex rel. Martin v. Talbot, supra, and others. See also Bond v. Bond, 167 So.2d 388, at p. 391 (La.App. 4th Cir. 1964), in which this Court said:
"It is too well settled to require citation of authority that the natural parent has a superior right to the custody of his child over all third persons. It is also well settled that the welfare of the child is of paramount importance and that the rights of the natural parent must yield to the superior right of the State to deprive the natural parent of the care and possession of his child in case the physical, mental, or moral welfare of the child requires it. Two of the most recent decisions on the subject are: Mouton v. St. Romain, 245 La. 839, 161 So.2d 737, 739; and State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759, both decided February 24, 1964."
This Court held in that case in a contest between the father and a third person (stepmother) that the father's superior right would prevail unless the opponent could discharge the burden of proof required of her to show that the physical, mental, or moral welfare of the child would be jeopardized by permitting the child to remain in his custody. The opponent here as in that case has failed to discharge that burden.
We are not unmindful of the emotional trauma which will be suffered by the children in being removed from the home of their grandmother, who loves them very dearly, nor are we unmoved by the sorrow of Mrs. Billeiter in having to give them up. We can only hope that Mr. Acomb will always maintain a warm and cordial relationship with her and permit the children to cultivate a wholesome and happy association with their grandmother.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
Affirmed.