FRUGÉ, Judge.
This is a habeas corpus proceeding whereby the relatrix, Mary Lee Copell, is seeking the custody of her son, Robert Joseph Sullivan, who was heretofore in the custody of the defendants-appellants, Mr. and Mrs. Marusak. On the merits, the trial court ordered the return of the child to the plaintiff-appellee from which judgment and order the defendants have effected this de-volutive appeal.
The background to this litigation is that Mary Lee Copell was married to Arvel Sullivan in 1961 at the age of sixteen years. In 1963, they were separated, but by then, Mrs. Copell had given birth to two girls, Janet Lee and Debra Diane. Since their estrangement, Arvel Sullivan has made no contact at all with the relatrix, Mary Lee Copell, nor has he provided for the children of their marriage in any way whatsoever since 1963.
Thereafter, Mrs. Copell lived in open concubinage with Gary Hall for several months and followed that illicit relationship with a similar one with Stanly Romero, which also lasted over a period of months. During this time, while she was still married to and not judicially separated from Arvel Sullivan, Mrs. Copell conceived and bore a son named Robert Joseph Sullivan,, who was born in October of 1965. In early 1966, she began living with Wayne Copell as husband and wife, and this adulterous relationship continued until Mrs. Copell procured a divorce from Arvell Sullivan in February of 1967. Shortly thereafter, she and Wayne Copell were -married, thereby legalizing their relationship. At the time of the trial, Mrs. Co-pell was several months pregnant with a child conceived by her present husband, Wayne Copell. The record reveals no further indiscretions or illicit relationships with any other man except those mentioned above. In response to the question as to why Mrs. Copell did not obtain a legal divorce from her prior husband any time earlier than 1967, she answered that she was without funds sufficient to obtain a divorce until she and Wayne Copell had saved money for such purpose. (Actually, she borrowed money to obtain this divorce from the bank.)
After her first husband, Arvel Sullivan, left Mrs. Copell with the two children, she found it necessary to seek employment, and she did work as a barmaid making $40.00 to $60.00 per week, until the time she began residing with Wayne Copell.
Because of her necessitous circumstances, Mrs. Copell was unable to care for her two daughters personally and had not sufficient means to hire a full-time baby sitter. For those reasons, she placed one daughter, Janet Lee, in the care of one of her sisters and the other daughter, Debra Diane, in the care of her mother, primarily. These relatives provided for these two girls until Mrs. Co-pell began living with Wayne Copell at which time Mrs. Copell’s two daughters were returned to her, and she remained home and tended to them.
Upon the arrival of Robert Sullivan in 1965, Mrs. Copell had made arrangements with the defendants Mr. and Mrs. Marusak (Mrs. Marusak is Mrs. Copell’s sister.), which agreement, according to Mrs. Copell and other witnesses, was to the effect that the Marusaks were to keep the child and rear it until Mrs. Copell should become able to provide a suitable home for him. Mr. and Mrs. Marusak, however, maintained that Mrs. Copell intended to give Robert to them permanently, and that she evidenced no desire to ever regain custody of the boy.
Since Mrs. Copell has been living with Wayne Copell, her situation has become stabilized and the circumstances are now such that she and Mr. Copell feel confident they can provide a good home for Robert Joseph Sullivan. The two older girls have already been with Mr. and Mrs. Copell for a year before this trial.
The evidence discloses that Mr. Copell is gainfully employed making a salary of at least $100.00 per week, that they are renting a two-bedroom house, and that their debts *479 are minimal. Mr. Copell evidences a desire and intention to adopt as his own all three of the children — the two girls and Robert Joseph.
Counsel for the defendant strongly urged that Mrs. Copell is unfit to have custody of her youngest child, Robert Joseph, because of her prior illicit relationships. Although we fully agree with this contention to the extent that Mrs. Copell’s prior adulterous activities strongly indicate that she was then morally unfit to have custody of her children, we agree with the trial court in concluding that the evidence sufficiently indicates that Mrs. Copell has mended her former ways and is now living a much better, secure and moral life. While her relationship with her present husband began as an illicit one, her subsequent marriage to him in April of 1967, cured that defect.
We feel that the instant case is closely aligned to the facts in Mouton v. St. Romain, 153 So.2d 890 (La.App.3rd Cir. 1963), affirmed 245 La. 839, 161 So.2d 737 (1964). In affirming this case, the Supreme Court reiterated the modern rule that the natural parent has a superior right to the custody of the child unless it be shown that such rights have been forfeited by the parent or that the parent would likely subject the child to neglect or bad influences. Only in such cases can the State’s interest paramount that of the parents. Further, it is presumed that the welfare and best interest of the child is served by reuniting him with his natural parents. See State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964); State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); Jaubert v. Miller, 205 So.2d 493 (La.App.3rd Cir. 1967).
Counsel for the defendants-appellants contends that basically the only issue is the welfare of the child Robert Joseph Sullivan and that our courts have refused to return custody of a child to his parents in cases where they found that the child’s best interests were served by allowing it to remain with its foster parents. For this proposition, he relies principally upon: Succession of Tate, 168 La. 834, 123 So. 590 (1929); State ex rel. Munson v. Jackson, 210 La. 1, 26 So.2d 152 (1946) ; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740 (1946); State ex rel. Harris v. McCall, 184 La. 1036, 168 So. 291 (1936). Each of those cases is distinguishable on its facts from the instant one. Further, if the rule of law pronounced in those cases — that the court will deny a natural parent custody of his child if the best interest of the child would be served by leaving him with foster parents— differs to any degree from that iterated in later cases, these later cases must be deemed to have modified the rule to a slight degree so as to create a presumption that the welfare of the child requires its being with its natural parent unless there is some showing that such natural parent is somehow unfit to care for the child. See State ex rel. Martin v. Garza, supra. This modification has in effect established that the natural parent has a right to custody of his child paramount to the right of a foster parent if the natural parent is morally, physically, and mentally able to properly care for the child.
In the instant case, it is not shown that Mrs. Copell abandoned her son or forfeited any of her parental rights to him. Nor is it shown that at the present time, she is morally unfit or that she will,subject the child to bad influences or- to neglect.
For the foregoing reasons, the judgment of the trial court is hereby affirmed at defendants’ cost.
Affirmed.