222 So.2d 573 (1969)
STATE ex rel. Julia Chambers STOKES et al., Petitioner-Appellee,
v.
Adelaide Jones STOKES (Adlay Jones Stokes), Respondent-Appellant.
No. 7629.
Court of Appeal of Louisiana, First Circuit.
April 14, 1969.
Rehearing Denied May 28, 1969.
Writ Refused June 27, 1969.
*575 Walton J. Barnes, Baton Rouge, for appellant.
Arthur Cobb, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
SARTAIN, Judge.
In this suit, Julia Chambers Stokes (petitioner), the natural grandmother, seeks the legal custody of her four grandchildren. Service of her petition was had upon Adlay Jones Stokes (respondent), the children's legal mother. The trial judge granted judgment in favor of the natural grandmother from which judgment the mother has appealed.
Petitioner alleged that the children are the issue of a legal union between her son, Henry Clyde Stokes, and respondent; that the children have resided with her since February, 1964, when they were abandoned by respondent; that Henry Stokes was killed in an accident on or about June 21, 1967; and that she desires the provisional, temporary and finally the permanent care of the children. She further alleged that the mother is mentally and morally unfit for their custody and has not visited with the children during the past three years. When the petition was filed, the children were 11, 8, 6 and 3 years of age. Upon the filing of the petition, the trial judge granted an ex parte order awarding petitioner the "provisional and temporary" custody of the children.
Respondent timely filed an answer denying the allegations as to her unfitness and failure to visit the children. She asserted that because of her own ill health it was agreed that the children should be cared for by petitioner and that after regaining her health, petitioner has refused to return the children to her. She prayed for and a rule nisi was issued directed to petitioner ordering her to show cause on August 14, 1967, why respondent should not be awarded the permanent care, custody and control of the children; and, why petitioner should not be directed by the court to turn the children over to her. The matter was heard on the return date and then taken under advisement by the court. On October 23, 1967, written reasons were handed down awarding the children's custody to petitioner, which reasons stated:
"The facts reveal that for the preceding three and one half years and since her last return from the mental hospital at Jackson, Louisiana, this mother had absolutely nothing whatsoever to do with any need or interest of these children except on those rare holiday occasions when the now deceased father took them to see her. The only person providing the necewsary (sic) care and constant attendance upon the needs of these children was the paternal grandmother and the father, at such times and at such places as he chose to provide shelter for these children, even though from time to time it was in the home of women he was then living with in open concubinage.

*576 Always and ever during this interval of time in the lives of these children it was a dedicated and loving grandmother who provided the necessities and the love required by these and all other children. The record reflects, uncontradicted, that the mother even refused to talk to one or more of her children on the telephone. Adelaide Jones Stokes did not attend the funeral of her husband and evinced no considerable interest whatsoever in the lives of these children until such time as it became apparent to everyone concerned that there might be a large sum of money due and owing these children for the death of their father under the tragic circumstances of his death. While it is argued that this Court can not exercise jurisdiction over the persons of these children except incident to divorce or separation, time and time again in the exercise of this Court's duty, it is necessary for this Court, both in its function as presiding judge over domestic matters at issue and in addition thereto, in its capacity as the juvenile court judge of this parish, to award children in neglect of children matters, in habeas corpus proceedings and in other matters affecting the immediate needs of children within the geographical limitations of this Court's jurisdiction."
* * * * * *
"For the reasons assigned above and with no eye to the financial benefits that may flow to someone for these children, the Court must, and hereby does, place the custody of these four children in their paternal grandmother, Julia Chambers Stokes."
Counsel for respondent directs a two-fold attack upon these proceedings. First, he contends that the Family Court sitting as a civil court has jurisdiction in custody matters only if such matters are incidental to a separation or divorce. Kelly v. Kelly, 227 La. 275, 79 So.2d 307 (La.S.Ct., 1955). He further argues that absent civil jurisdiction, the Family Court has only juvenile jurisdiction and for these children to be subject to the Family Court's juvenile jurisdiction they must be "neglected" as defined in In re Sherril, 206 La. 457, 19 So.2d 203 and L.R.S. 13:1570, subd. A(1), (2). He therefore concludes that since petitioner proceeded as in a civil matter and further alleged that the children were well cared for, they were not neglected and the court a quo was without jurisdiction (State v. LaBorde, 233 La. 556, 97 So.2d 393) and the judgment appealed from is an absolute nullity (Douglas v. Douglas, La.App., 146 So.2d 227).
Second, counsel for respondent alternatively argues that the proof adduced herein is insufficient to overcome the paramount right the law accords to a mother for the custody of her children.
We shall discuss these matters in the order raised and give reasons why we affirm the trial judge on his resolution of both issues.
In the Kelly Case the judge of the Family Court issued a writ of habeas corpus which was directed to the father to produce the child and show cause why the child should not be given over to its mother, who possessed a California judgment of custody. At the time the writ was issued La.Const. Article 7, § 53(5) adopted in 1954 provided for and set forth the jurisdiction of the court which read as follows:
"(5) All actions for divorce, separation from bed and board, annulment of marriages, and disavowal of paternity as well as of all incidental matters connected therewith including, but not restricted to, matters relative to alimony pendente lite and permanent alimony, custody of children, and injunctive relief or proceedings for the preservation of the community, jurisdiction of which has heretofore vested in the Civil District Court for the Parish of East Baton Rouge. * * *" (Emphasis ours)
In reversing the trial judge and ordering the writ dismissed and with reference to the above quoted constitutional provision, the court stated: (79 So.2d 307, 309) *577 "* * * Indeed, it is obvious from the clear language of the provision that the Family Court of East Baton Rouge Parish can entertain matters relative to the custody of a child only when that matter is an incident to or ancillary of an action filed in the same court for divorce, separation, disavowal of paternity, or annulment of marriage." (Emphasis ours)
It is equally clear that the Supreme Court was referring only to the Family Court's civil jurisdiction and not its juvenile authority.
The Kelly case immediately brought on the amendment in 1956 to La.Const. Article 7, § 53. Accordingly, the comparable provision relative to the jurisdiction of the Family Court was amended to read as follows:
"(7) All actions for divorce, separation from bed and board, annulment of marriages, establishment or disavowal of the paternity of children, alimony and support, custody and visitation of children, as well as of all matters incidental to any of the foregoing proceedings including, but not restricted to, the issuance of conservatory writs for the protection of community property, the awarding of attorney fees to the wife in judgments of divorce and separation, the cumulation of and rendering executory of alimony, the issuance of writs of fieri facias and garnishment under judgments of the court for alimony and attorney fees, jurisdiction of which has heretofore been vested in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. * * *" (Emphasis ours)
A comparison of the two amendments reflects a significant change. In the 1954 amendment the several categories of actions, i. e., divorce, separation from bed and board, etc., precede the language "as well as of all incidental matters connected therewith including * * * custody of children, * * *". In the 1956 amendment "custody of children" is included along with the categories of actions, i. e., divorce, separation from bed and board, etc., and most importantly the language "as well as of all matters incidental to any of the foregoing proceedings * *" follows the aforementioned categories and obviously refers to custody of children as a separate and distinct type of action. Thus, the 1956 amendment clearly vested the Family Court for the Parish of East Baton Rouge with original jurisdiction in all actions for the custody of children, whether or not such actions are connected with or ancillary to one for a divorce or separation from bed and board.
In case there is any doubt as to the jurisdiction of the Family Court in all proceedings for writs of habeas corpus, the matter was also put to rest by the 1956 amendment and paragraph (8) thereof which reads as follows: (La.Const. Art. 7, § 53 [8])
"(8) All proceedings for writs of habeas corpus for the determination and enforcement of rights to the custody of minors or for the release of any person in actual custody in any case of which The Family Court has original jurisdiction."
We agree with respondent's contention that this is not a juvenile matter because the children were being well cared for by the petitioner. This then leads to the question of whether or not the petitioner has a legal right to institute proceedings such as these. We find no prohibition, statutory or jurisprudential, that would prevent a person other than a parent from seeking legal custody of a child. Assuming arguendo that petitioner herein did not possess the legal right to seek the custody of these children such issue has been resolved because service was made upon respondent, who answered asserting her own priority and fitness. Accordingly, the question of who should obtain the custody of these children was put squarely before the court. The result would have been the same had respondent instituted a *578 writ of habeas corpus directed to the petitioner herein because the court then would have been empowered to render such judgment as it deemed to be in the best interest of the children.
Our law is well settled that where writs of habeas corpus are filed the court issuing the same has full authority to pass upon the issue of custody.
In cases such as this there are certain well defined rules that are applicable. In the recent cases of Mouton v. St. Romain, 245 La. 839, 161 So.2d 737 and State ex rel. Rothrock v. Webber, 245 La. 901, 161 So. 2d 759, both 1964 decisions of our Supreme Court, such rules were clearly set forth.
A mother, natural or legal, has a superior right to her children over third persons, but such right must yield to the superior right of the State to deprive her of the care and possession of her children in the event the physical, mental and moral welfare of the children require it. See State ex rel. Castille v. Cooke, 183 La. 404, 164 So. 153; State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8.
The qualifications of a foster parent are not the determining factor in deciding whether they or a parent should have custody unless and until it has been shown that the parent is unfit or that it will be in the best welfare of the children to deprive the parent of his or her superior right to custody.
In a contest between a foster parent and a natural parent the sole question for the court's consideration is whether the parent by his or her conduct has forfeited his or her parental right to the child, for it is the well established jurisprudence of this State that our courts are not authorized to interfere with a parent's authority over their child unless the court is satisfied that the parent will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they will be taken care of and properly brought up would justify the court in making some other disposition of the children. See State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228; and State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422.
The findings of fact of the trial judge as stated in his written reasons which we have quoted above are amply supported by the record. In our opinion the actions of the respondent herein over the past three and a half years evidences conduct of such a nature as to lead to no other conclusion but that she has forfeited the paramount right given to her by law for the custody of these children and that their best interest would be served by continuing their custody in the petitioner.
The record reflects that respondent was confined at the East Louisiana State Hospital at Jackson, Louisiana, on either three or four occasions. On the first two or three occasions the children were cared for by members of respondent's family. At these times respondent and Henry Stokes were residing together. However, prior to respondent's fourth confinement in 1963, she and Henry Stokes had separated. She and the children were then living with her parents in Zachary, Louisiana. At this time Henry Stokes obtained the children and from 1963 until the date of this hearing they were cared for by either Henry Stokes or petitioner. The record clearly shows that during this period of time Henry Stokes entered into at least four common law unions. However, the record is equally clear that the children remained with petitioner all of the entire time except for approximately seven or eight months. It was throughout this period of time that the children's mainstay was petitioner. If all did not go well in the home of the father, it was petitioner who came to the children's aid. When the father was unemployed or failed to provide support for the children, it was petitioner who provided them with food and clothing.
*579 While the record does not give the exact date of respondent's last release from the hospital the overall testimony clearly shows that it was well over three years ago. The record is quite clear that respondent only saw her children on two occasions, during this period of time, once at Easter and once at Christmas. Each of these times it was the father who brought them to see her. Respondent's explanation is that she was afraid of Henry Stokes. Aside from her uncorroborated testimony on this point the record is completely devoid of any evidence that would justify such fear as would prevent her from endeavoring to see the children on her own initiative. As a matter of fact the evidence negates any conclusion as to fear on the part of respondent as justification for her lack of attention of the children's welfare.
Counsel for defendant urges very strenuously that petitioner is unfit for the custody of these children and has not looked after them properly because she has permitted them to live with their father for short periods of time during the latter's four common law relationships. This argument is just as effective against respondent, who as the legal mother permitted her children to live under such circumstances. It is interesting to note that two days after the death of Henry Stokes and two days before she asked petitioner for these children, respondent had terminated a common law relationship between herself and one George Wilkinson.
We agree wholeheartedly with the trial judge that really the only person to consistently concern herself with the day to day welfare of these children for the past three and a half years was petitioner.
Accordingly, for the above and foregoing reasons the judgment of the district court awarding the custody of these children to Julia Chambers Stokes is affirmed at appellant's costs.
Affirmed.