REGAN, Judge.
The State of Louisiana, through the Department of Public Welfare, instituted a proceeding in the Juvenile Court for the Parish of Orleans on April 30, 1964, for the purpose of declaring the minor, Joseph Michael Toole, an abandoned child. Mrs. Thelma Morehaus, a half-sister of the child’s mother, intervened in that proceeding, endeavoring to have the child placed in her home in the event he should be considered as abandoned. On August 13, 1964, a judgment was rendered pronouncing the child abandoned, and the request of Mrs. Morehaus for custody was denied.
On August 25, 1964, Mrs. Christine Maxwell, another half-sister of the child’s mother, and the appellant herein requested the judge of the Juvenile Court to award custody of the child to her. On August 31, 1964, the court issued a rule to show cause why custody of the child should not be transferred from the Department of Public Welfare to Mrs. Maxwell.
A hearing thereof occurred on September 24, 1964, and on October 9, 1964, Mrs. Maxwell’s rule for custody, together with an oral request for visitation rights, was likewise denied.
From the judgment denying Mrs. Maxwell custody of the child, she has prosecuted this appeal.
The record reveals that the child, Joseph Michael Toole, was bom on December 28, 1958. His father, James Alfred Toole, deserted the family shortly after the child had attained the age of sixteen months. On November 14, 1963, his mother, Lorine Asher Toole, suicided.
*874 On the day of her sister’s death, the appellant removed the child to her home and cared for him for several days. Thereafter, officers of the Juvenile Bureau removed the child from the Maxwell home in conformity with a court order and placed him in the care of the Orleans Parish Division of Child Welfare of the Louisiana Department of Public Welfare. Legal custody of the child was later awarded to the Department, and he has remained in foster care since that time.
Before engaging in a discussion of the pertinent issues and of the evidence adduced herein, it should be pointed out that counsel for the Department of Public Welfare initially contends that Mrs. Maxwell possesses no right of action to obtain custody of the child in an abandonment proceeding, since the law does not afford a collateral relative the care and custody of a child as a matter of right.[1] In addition thereto, he insists that Mrs. Maxwell’s motion for custody constituted an application for a new trial, which was not timely filed, and that her appeal was likewise prosecuted too late. We pretermit a determination of the validity of the Department’s contention that the appellant possesses no right of action and that the pleadings referred to hereinabove were not timely filed for the reason that the case has been fully tried in the lower court without a consideration of these issues, and in addition thereto, whenever it is judicially feasible, we prefer, in the pursuit of justice, to decide a case of this nature on its merits.[2]
Appellant complains that the lower court abused its discretion in pursuance of the best interest of the child when it refused to grant her custody, without the existence of sufficient evidence upon which to predicate a finding of unfitness. Specifically, she emphasizes that the record is devoid of any evidence which would militate against her worthiness to accept custody of her nephew, except for a statement of Karen Steeves, a social worker, made at a prior hearing to the effect that Mrs. Maxwell, “was reported to be running a house of ill repute”, and a statement by the same social worker contained in a written report addressed to the Juvenile Court in which she described Mrs. Maxwell as a “known prostitute and police character”.
Hence, it is obvious that the fundamental question posed for our consideration is whether the judgment of the lower court, denying Mrs. Maxwell custody of the child, was so erroneous and unsupported by the evidence as to warrant a reversal by us.
In an effort to rebut the statements of the social worker, Mrs. Maxwell testified as to her good character and the circumstances leading up to her rule for custody of the child. The record in this respect reveals that she is a divorcee and the mother of two children. She owns a duplex in the uptown section of New Orleans, and claims to have an income of approximately $1,000.00 per month. She readily admits that she has been confined in the mental ward of a local hospital for treatment of emotional problems on at least three or four occasions, and conceded that when the hearing hereof occurred she was anticipating further treatment by a psychiatrist.
She explained that her characterization as a prostitute and police character resulted from a series of unfortunate coincidental encounters with the police. She related that her first brush occurred on the day of her half-sister’s suicide, when she left her home in the care of a female acquaintance, and subsequently returned and learned that this casual acquaintance had engaged in an illicit affair with one man, and thereafter had arrange another with an undercover member of the New Orleans Police De *875 partment. She was charged with letting her home for prostitution; however, the accusation was subsequently dismissed.
She asserted that a second encounter with the police occurred when she was merely having coffee with the manager of a local contracting firm which she had engaged to renovate her home, and the police entered therein and accused her of offering to commit prostitution. This charge was also dismissed.
The whole tenor of Mrs. Maxwell’s testimony is to the effect that she is the victim of vicious and unfounded rumors and gps-sip emanating from her neighbors. She readily admits that the neighbors instigated a petition, the purpose of which was to remove her from the neighborhood; however, she insists that this was the result of vicious and unfounded hatreds, the origins of which were not explained by her.
 It is well settled that the primary consideration in determining child custody is his or her welfare. In making this judgment, a broad discretion is afforded to the trial judge, whose considered opinion is of necessity entitled to great weight.[3]
It is also well settled that even the paramount right of a mother to the custody of her child is subject to the authority of the state to deprive her thereof if she is morally, mentally, or otherwise unfit or incapable of caring for the child, or if the child’s welfare so requires.[4]
In addition to the foregoing rationale, a Juvenile Court Judge is entitled to evaluate any character of evidence, including both hearsay and opinion evidence, in a case of this nature. The statutory law which confers upon him this unusual judicial prerogative reads:
“In the hearing of all cases under this Part, involving petitions of juvenile deliquency or neglect, all facts connected therewith and all surrounding circumstances, including the environment and history of the child, together with any character of evidence, including hearsay evidence and opinion evidence which the court, in its discretion, may deem proper, may be admissible, and the testimony of the probation officer assigned to the case shall be admissible.” [5]
In any event, propriety and judicial good taste dictate that we avoid engaging in a critical dissection of the foregoing testimony. Suffice it to say that in view of the nature of the evidence inscribed in the record, we are of the opinion that the trial judge did not err nor abuse his discretion in refusing to award custody of the child to Mrs. Maxwell. On the contrary, we are led to the inevitable conclusion that he reasoned wisely and therefore in the best interest of Joseph Michael Toole.
For the foregoing reasons, the judgment of the lower court is affirmed.
Affirmed.

. See In re Ryals, 231 La. 683, 92 So.2d 581 (1957).

. See Lyell v. United States Fidelity & Guaranty Co., La.App., 117 So.2d 290; Trasatti v. Jeffer, La.App., 86 So.2d 230; Ford v. Baird Bros., La.App., 161 So. 45 (1935).

.Guillory v. Guillory, 221 La. 374, 59 So.2d 424; State ex rel. Cockerham v. Jordan, La.App., 134 So.2d 81; State ex rel. Paul v. Department of Public Welfare, La.App., 170 So.2d 549.

. See State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759; State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422; State ex rel. Paul v. Department of Public Welfare, supra.

. LSA-R.S. 13:1579.1.