218 So.2d 571 (1969)
253 La. 496
In re STATE of Louisiana in the Interest of Barbara Christopher THOMAN.
No. 49571.
Supreme Court of Louisiana.
January 20, 1969.
Rehearing Denied February 24, 1969.
*572 Fernand F. Willoz, III, New Orleans, for respondent-applicant.
Gibson Tucker, Jr., New Orleans, for respondent.
HAMLIN, Justice.
In the exercise of our supervisory jurisdiction, we directed certiorari to the Orleans Parish Juvenile Court for review of its judgments which placed the custody of Barbara Christopher Thoman, an eleven year old minor, with the Department of Public Welfare of the State of Louisiana, and ordered that she be placed through the Department in St. Elizabeth's Childrens Home, 1314 Napoleon Avenue, New Orleans, Louisiana, for an indefinite period and until further orders of the court.[1] Art. VII, Secs. 2 and 10, La.Const. of 1921.
The facts of record disclose that Charles Lea Thoman and Helen Ruth Thoman were granted a final decree of divorce, June 2, 1967, by the Circuit Court for the Tenth Judicial Circuit of Alabama In Equity. Complainant, Helen Ruth Thoman, was given the care, custody and control of the minor children of the parties, namely, Barbara Thoman and Charles Hardaway Thoman. By Decree of Modification, June 7, 1967, Charles Lea Thoman was granted the care, custody and control of his son, Charles Hardaway Thoman. The decree recited that Helen Ruth Thoman was "not entitled nor allowed" alimony in the cause, but respondent, Charles Lea Thoman, was to pay her $150.00 per month for the support and maintenance of Barbara Thoman.
Charles Lea Thoman and Helen Ruth Thoman both remarried. Charles lives in Birmingham, Alabama, with his wife, Katherine Ross Thoman, her two children by a previous marriage, Alice, age ten, and Gano, age 7, and his minor son, Charles Hardaway Thoman, age 4. Helen Ruth married Jack Waterman, from whom she is now separated, and moved to New Orleans, Louisiana, where she established her domicile. Barbara Christopher Thoman accompanied her mother to New Orleans and thereafter resided with her.
*573 After her marriage to Waterman, Helen Ruth suffered a drinking problem for which she received occasional treatment.[2] The problem become acute, to the extent that she injured herself slightly by slashing her wrists. Helen Ruth loved Barbara very dearly but began to neglect her; during September, 1968, Barbara left home one evening and sought permission from a neighbor to spend the night with her and her family. She remained with the family several days and was then turned over to the juvenile authorities. Her temporary custody was granted to Mr. and Mrs. C. Ellis Henican, Jr.[3] On September 10, 1968, a petition charging that Barbara "* * * was then and there, on or before September 3, 1968, within conditions set forth in R.S. 13:1570, Subsection A, Paragraph (1), relative to neglect, in that she was without proper parental care, custody or supervision; the mother of Barbara Christopher Thoman is alleged to be emotionally incapable of providing the care necessary for her well-being, therefore, she is in need of the care and protection of Juvenile Court," was filed by C. J. Kerber in the Juvenile Court for the Parish of Orleans. It was signed by several persons, including Rev. Sidney A. Lange, Holy Name of Jesus Church.
On September 17, 1968, the Juvenile Court found Barbara Christopher Thoman to be neglected and rendered the following order:"Barbara Chistopher Thoman is found to be neglected. The court will hold the matter open for disposition until October 10, 1968, at 10 a. m., and the court will order that a further investigation be made of the homes of the parents of the child, and any other residential resources that might be available to this court. The court requests that Mrs. Kitty Williams, Probation Department, make said investigation and submit a report to the court. Notify the parents of the child, Mr. Gibson Tucker, Mr. Fernand Willoz, and Mr. D. D. Howard, Attorneys; also notify any other agency or persons deemed appropriate by Mrs. Kitty Williams of the Probation Department in connection with disposition. In the interim, the child is to remain with Mr. and Mrs. C. Ellis Henican, Jr., pending disposition herein and until further orders of the court."
At the hearing conducted by the Juvenile Court, September 17, 1968, Charles Thoman appeared and testified that he preferred to have the custody of Barbara. He said that the child needed a home with a mother and a father and other children and the things that a child gets in a home with a mother and father and other children. When questioned with respect to his inaction concerning Barbara, he testified: "Yes, and I consulted with Mr. Howard about it, what action we could take. On one call the person would not identify herself other than to say that she was a neighbor. [He had calls regarding Barbara's neglect.] I said I can't accomplish anything unless I can find someone who will come to court and testify to these things you have told me. It has been this terrific reluctance to do this. I came to New Orleans on one occasion and Mrs. Thoman was living some place, I don't recall whether it was on Jefferson Avenue, but it was in another apartment. The neighbors called me and said that Mrs. Thoman was, I think, in Bridge House. I came down here and went to see the people that called me and they said, well, we didn't see anything. It was obvious that they did not want to go into court. I said where is my child and they gave me the name of the people who had the child and I went to their house and said I want to see the child and they refused to let me see her." When asked whether he had visited Barbara during the last year, he responded: "No, when my wife had the child under temporary custody under the Juvenile Court in Birmingham each time I had gone to see *574 the child at her home it would wind up in a big argument and fussing and everything and I just saw no reason to subject the child to that sort of a situation."
A second hearing was held on October 24, 1968, and at this hearing Mrs. Kitty Williams of the Probation Department testified: "At this point, my impression of the best interest for Barbara is having her placed at St. Elizabeth's and allow us opportunity to work with Mrs. Thoman and expedite Barbara's return because she is so very attached to her mother. I think it would not be in her best interest to have her removed completely from this jurisdiction and taken out of the State. The chances of her ever being returned to her mother's custody would be very remote. Mrs. Thoman's progress is remarkable as far as her recovery from alcoholism is concerned, but I think it is too early to be sure she is going to carry on. I think she needs an opportunity to prove herself."
Helen Ruth Thoman Waterman testified at both hearings. She admitted her problem but testified that she was receiving treatment and doing everything possible to correct it. She voiced her love and devotion for her daughter. She said that she received $150.00 per month child support money and $40.00 monthly from her mother, and that occasionally she received extras. She stated that she was attempting to secure work.
In his reasons for the judgments, supra, the trial judge stated: "* * * The strong affection between the mother and the child hereinabove referred to was manifested to the court and to the probation officer of the court on separate occasions as reflected in the confidential report to the court by the probation officer. The neglect, as the record will reflect, is due to the illness of the mother. She is presently receiving medical care. Further, the conversation with the said child reflects that she would not, under any circumstances, be receptive to living with her father in Birmingham, Alabama, the place of his residence. When this subject was discussed with the child and the child was advised by the court that a possibility existed that she might live with her father, the child's reaction was strongly in the negative to the point of almost panic. She simply would not want, under any circumstances, to live with her father. The court is of the opinion that forcing the child to so do, at this time, would result in emotional damage to the child, under the circumstances." The trial judge also stated: "Were the court to place this child with her father in Birmingham, Alabama, the court is of the opinion that such action would destroy the mother, destroy the child, and disrupt the home of the father and the step-mother." He concluded: "After considering all of the hereinabove the court is of the opinion that the best interests of the child, the best interests of the mother and the best interests of the father would be served by the court ordering that the child, at this time, be placed in St. Elizabeth's Childrens Home, until further orders of the court."
Writs were refused to Charles L. Thoman by the Court of Appeal, Fourth Circuit; it stated that relator had an adequate remedy by appeal. Mrs. Helen Ruth Thoman (Waterman) was granted a devolutive appeal from the trial court's judgment, the order being signed November 18, 1968. As stated supra, we granted certiorari on the application of Mr. Thoman, and the matter is before us for our disposition.
The father, Charles L. Thoman, contends that the trial court's judgments were erroneous and contrary to law in that:
1. It is the well settled jurisprudence of this State that a parent will not be deprived of the custody of his child unless it is shown that the deprived parent is, at least in some way, unfit to care for the child.
2. Overemphasis was placed on the desires of the child not to be placed with her father and in awarding custody solely *575 on the basis of the minor's stated desires.
The mother, Helen Ruth Thoman Waterman, contends that the Juvenile Court erred in refusing to return the custody of the minor to her, it being conclusively shown at the hearing on October 24, 1968, that the conditions which had prompted the court to rule that the child was neglected had been corrected.
In this matter, the father has been denied the right to the custody of his daughter and the mother has had such right taken away from her. The custody has been placed with the Department of Public Welfare of the State of Louisiana which is with the State so to speak. The Orleans Parish Juvenile Court declared the child neglected, but the facts, as we have shown, reflect that Barbara was only neglected by the mother, who had her legal custody and was emotionally ill at the time of the neglect. Under such facts, we are not precluded from disturbing the Juvenile Court's award of custody if we find that a change is to the best interest of Barbara. See, Art. VII, Sec. 10, La.Const. of 1921. "The Supreme Court has control of, and general supervisory jurisdiction over all inferior courts."
The rule is that the natural parent has a superior right to the custody of his child unless it be shown that such right has been forfeited by the parent or that the parent would likely subject the child to neglect or bad influences. Only in such cases can the State's interest paramount that of the parents. Further, it is presumed that the welfare and best interest of the child is served by reuniting him with his natural parents. State ex rel. Copell v. Marusak, La.App., 205 So.2d 477, 479. See, Jaubert v. Miller, La.App., 205 So.2d 493. The courts are reluctant to interfere with this parental right and authority except under exceptional circumstances. Bellett v. Brinson, La.App., 206 So.2d 758. Cf. State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8; State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422; State ex rel. Lott v. Courtney, La.App., 178 So.2d 489; 25 La.L.Rev. 299.
Nothing in the evidence of record indicates that Charles Thoman is an unfit father; nothing indicates that he is unable to take care of his daughter; nothing indicates that he will subject her to bad influences or neglect her. He has consistently paid her child support, and in his testimony, supra, he explained his reasons for not visiting her. He also explained that because of the peculiar circumstances involved, he did not contribute extras for Barbara's convenience.
Mr. Thoman is a civil engineer and is employed by Dunn Construction Company as a design engineer and estimator. He was previously employed in New Orleans as Assistant Vice-President for Engineering and Construction for LaKratt Corporation. He stated that his family has an approximate annual income of $15,000.00.
Mrs. Kitty Williams, Probation Department, testified with respect to her contacts with the Jefferson County Department of Pensions and Security, Birmingham, Alabama. Her testimony is to the effect that the Birmingham Office reported that the Thomans were a close and united family; that they were capable of giving Barbara a good home and that they would not subject her to any bad influences in their home.[4]
In motion for a new trial in the Juvenile Court, Thoman's counsel alleged that Mrs. Katherine Thoman concurred with her *576 husband's desires to obtain custody of Barbara and had not testified because of her social acquaintance with the trial judge. The motion states that counsel thought that any attempt to elicit Mrs. Katherine Thoman's testimony might be construed by the court as an unethical attempt on the part of counsel to use undue influence on the court, which charge counsel attempted scrupulously to avoid. An affidavit by Mrs. Katherine Thoman was annexed, in which she deposed in part: "Affiant further avers that she fully concurs in the desires of her husband to obtain the custody of the minor, BARBARA CHRISTOPHER THOMAN, so that she can bestow upon the said child the constant care, love and affection that only a mother can give, and that further, so that the said BARBARA CHRISTOPHER THOMAN can be reunited with her brother, Charles Hardaway Thoman, so that both children can enjoy the mutual relationship of brother and sister, for their mutual benefit."
The well established principle of law with respect to the custody of children (especially those of tender years) is that the mother is preferred unless shown to be morally unfit or otherwise unsuitable. Poole v. Poole, La.App., 189 So.2d 75, 82; Hathorn v. Hathorn, 237 La. 554, 111 So.2d 770; State ex rel. Lott v. Courtney, La. App., 178 So.2d 489.
The facts of record affirmatively show that Mrs. Helen Ruth Thoman Waterman is presently unable to care for her daughter. We sympathize with Mrs. Waterman and feel that with courage, conviction, and sincere endeavor, she can regain her health and stability. This recovery cannot be achieved within a short period of time; permanency is somewhat removed. The time element is indefinite, and it is probably for that reason the trial court placed Barbara in St. Elizabeth's Childrens Home for an indefinite period.
It is settled jurisprudence that in cases involving custody of children the primary concern of the Court is the welfare and best interest of the children, and this consideration must prevail over the parental right to custody in cases wherein the mentioned principles conflict. State ex rel. Lott v. Courtney, La.App., 178 So.2d 489, 491. Cf. State v. Toole, La.App., 173 So.2d 872; 26 La.L.Rev. 463. We therefore arrive at a determination of the question of whether it is to Barbara's best interest to permit her to remain in St. Elizabeth's Childrens Home or award her custody to her father, who, as has been shown supra, is most desirous to attain it. Cf. State ex rel. Conerly v. Sonier, 209 La. 138, 24 So.2d 290.
Barbara is well into her twelfth year. She attends Holy Name of Jesus School in New Orleans and is in the sixth grade. She is a normal student with average grades and presents no behavioral problems; she plays with other children and adjusts in the classroom. She is a normal child despite the conditions under which she has lived. The trial court was impressed with her maturity and analytical judgment.
Mrs. Williams of the Probation Department found that Barabara seemed frightened at the prospect of going home with her father. The trial judge, as stated supra, said that Barbara was not receptive to the idea of going to her father's home.
We understand the child's fears; they are those of a new environment, new friends, and new rules and regulations. However, Mr. Thoman's testimony reflects that he realizes that if Barbara goes to live with him and his family there will have to be an adjustment, and he is willing to meet it. Mrs. Katherine Thoman's affidavit, supra, affirms her willingness to make Barbara comfortable.[5] We also understand that Barbara loves her mother, and such love is commendable. We further understand *577 Barbara's desire to remain close to her mother; her mother has been ill, and she has not lived with her father and his new family. However, under the facts and circumstances of this case, we do not think that it is to Barbara's best interest and welfare to remain institutionalized for an indefinite period of time. She is approaching junior high school age and will soon have the personal confrontations of a teenager, at which time she will need care and attention. Her natural father and his wife offer her love, understanding, companionship, support, entertainment and guidance. She requires these, as well as nearness to and relationship with her younger brother.
A child's desires and wishes merit consideration. However, we do not find that they are sufficiently strong in the instant case to prevail over the natural right of Mr. Thoman to the custody of his daughter Barbara. Acomb v. Billeiter, La. App., 175 So.2d 25; Rose v. Rose, La.App., 177 So.2d 659. Likewise, the burden of proof has not been met for the disqualification of Mr. Thoman to his natural right of custody. State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422; Bellett v. Brinson, La.App., 206 So.2d 758.
For the reasons assigned, the judgment of the Orleans Parish Juvenile Court is reversed and set aside. It is now ordered and decreed that the custody, care and control of the minor Barbara Christopher Thoman be awarded to her father, Charles L. Thoman. All costs to be paid by Charles L. Thoman.
SANDERS, Justice (dissenting).
I withheld my approval of the supervisory writ in this proceeding, because I entertained the view that relator had an adequate remedy by appeal. See La.Const. Art. 7, Sect. 29; LSA-R.S. 13:1591. The proceeding is now before us, however, and we must review the juvenile court judgment.
In a proceeding of this kind, a juvenile court has jurisdiction to take custodial action only if the court finds the child to be neglected. LSA-R.S. 13:1570, subd. A(1) (2); LSA-R.S. 13:1580; In re Robichaux, 211 La. 128, 29 So.2d 589; State v. McMillan, 191 La. 317, 185 So. 269.
The juvenile court judge made an explicit finding that the 11-year-old girl involved in this proceeding was neglected and adjudicated her a ward of the court. Although the majority does not specifically affirm the adjudication, such an affirmance is implicit in the disposition made, a custody award rather than a dismissal of the proceeding. I concur in the affirmance.
Strongly attacked is the custodial disposition made by the juvenile court judge. The law governing the disposition is found in the Juvenile Court Act, LSA-R.S. 13:1561-1592.
LSA-R.S. 13:1580 provides:
"If the court shall find that a child is within the purview of R.S. 13:1561 through 13:1592, it may adjudge the child to be a neglected child or delinquent child or a child who is otherwise in need of the protection of the state. The court in its judgment may proceed as follows:
"(1) Place the child on probation or under supervision in his own home or in the care or custody of a suitable person elsewhere, upon such conditions as the court shall determine.
"(2) Assign the custody of the child to a public or private institution or agency authorized to care for children or to place them in family homes. In committing a child to a private institution or agency, the court shall select one that is approved by the state department of public welfare. Where no institution, social agency or association approved by the state department of public welfare for the care or *578 placement of children is available to the court, the court may commit the child to some other institution, social agency or association, which, in the judgment of the court, is suitable for the care of such child. Said commitment may be for an indefinite period but in no case beyond the minority of the child.
"(3) Make such other disposition of the child as the court may deem to be for the best interests of the child, including commitment to a public mental hospital or institution for the mentally defective. Provided that nothing herein shall be construed as authorizing the removal of the child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
"(4) The court may dismiss the petition or otherwise terminate its jurisdiction at any time for good cause shown."
In caring for a ward of the court, the juvenile court has broad discretion. State v. Traylor, 216 La. 193, 43 So.2d 469; In re Caronna, 197 La. 494, 2 So.2d 1.
The juvenile court judge placed the child temporarily in St. Elizabeth's Childrens Home, New Orleans, through the State Welfare Department. The judge's wellwritten opinion so fully supports his disposition that I adopt it:
"The court is of the opinion that, at this time, based upon the testimony contained in the record and after considering all of the testimony and circumstances, the best interest of this child would be served by placing the child in a residential boarding school group setting in the metropolitan New Orleans area, until further orders of the court, as a temporary measure, consistent with the development of a plan for the return of the child with her parent at the earliest possible time provided the home of the said parent is conducive to the welfare of the said child. The rendition of an order by this court placing this child in such a setting is contrary to the wishes and request of the father of the minor child. The record will reflect that the father is seeking the custody of the said child.
"The court is of the opinion that, at this time, the mother of the child is unable to presently care for the needs of the said child who is, at this time, eleven years of age. The court in its deliberations talked with this child in the privacy of its chambers and in the presence of the lady with whom this child is presently residing, Mrs. C. Ellis Henican, Jr., outside of the presence of both counsel for the parties at interest, that is, counsel for the mother of the child, and counsel for the father of the child, and outside of the presence of any member of the Probation Department. This was done only after both counsel and the Probation Department was consulted and concurred with by them. While this court cannot render judgments reflecting the will of minor children and the desires of minor children, it appears to the court that it behooves anyone responsible for the care and custody of a minor child to analyze with great care the thoughts, desires and feelings of said minor when the child has attained a sufficient age to analyze, with judgment, his or her feelings. The court is impressed with the maturity of this child and the analytical judgment of the said child. The court found that the bond of affection presently existing between the child and her mother is of such importance to this child that it must be fostered and not destroyed in spite of the fact that this court found sufficient evidence that the child was in fact neglected by her mother. The strong affection between the mother and the child hereinabove referred to was manifested to the court and to the probation officer of the court on separate occasions as reflected *579 in the confidential report to the court by the probation officer. The neglect, as the record will reflect, is due to the illness of the mother. She is presently receiving medical care. Further, the conversation with the said child reflects that she would not, under any circumstances, be receptive to living with her father in Birmingham, Alabama, the place of his residence. When this subject was discussed with the child and the child was advised by the court that a possibility existed that she might live with her father, the child's reaction was strongly in the negative to the point of almost panic. She simply would not want, under any circumstances, to live with her father. The court is of the opinion that forcing the child to so do, at this time, would result in emotional damage to the child, under the circumstances.
"It appears to the court, at this time, that it is necessary that the child remain in an appropriate boarding school wherein the educational needs and other needs of the child might be provided with a view that this placement is only temporary until the return of this child to her parent. This court is influenced by the fact that were this child permitted, or ordered, to be taken from this jurisdiction to Birmingham, Alabama, in a strange atmosphere to live with her father and step-mother with whom she has had no contact for the past two years, and be forced to be taken from her mother at this time, irreparable harm might be suffered by this child. The child expressed a strong desire to the court to permit the court to return her to her mother, however, the court is of the opinion that, at this time, this also is unwise.
"The illness of the mother, as the record will reflect, is such that were this child and her mother separated to the extent required by placing this child in custody of the father in Birmingham, Alabama, serious irreparable harm and damage would result to the mother which, in this court's opinion, would result in ultimate emotional damage to this child.
"Were the court to place this child with her father in Birmingham, Alabama, the court is of the opinion that such action would destroy the mother, destroy the child, and disrupt the home of the father and the step-mother.
"This court is mindful of the fact that the court should not deprive the father or the mother of the child unless absolutely necessary and should place the custody of the child with her father or relative if the mother is unable to properly care for the child. However, the court is concerned with, not only who has the greater right to custody, whose custody right is greater than another's custody right, but the court must be concerned with an adjudication which, in the court's opinion, would be in the best interest of the child. * * *
"It is imperative, at this time, that the child remain in New Orleans and that an incentive be provided to the mother to have this child returned to her as early as possible and not to foreclose this possibility to her forever by sending this child out of the State of Louisiana to a foreign jurisdiction and for all practical purposes depriving this mother of any possibility of custody in the future.
"While the child is in the temporary boarding school facility, it would be the hope and desire and plan for this child that visitation would be encouraged by both the mother and the father. "Custody of minor children is a delicate situation, however, any temporary custody order must be considered only as temporary with the ultimate aim of encouraging the child to be reunited with her mother, under the supervision, control and counseling of the court and its probation staff. The judgment of this court, in the court's *580 opinion, is in furtherance of this aim at this time.
"While the father of the minor child manifests a desire to have custody of this child placed with him, the record will reflect that the step-mother, at no time, appeared in these proceedings to indicate to the court any concurrence. It is of utmost importance for any court, before considering the suitability of a home, that the step-mother, or a person responsible for the care of that home, should give his or her concurrence. This was noticably absent to the court.
"Through the efforts of the Probation Department of the Juvenile Court, the Department of Public Welfare of the State of Louisiana, and the Associated Catholic Charities, facilities have been made available for the placement of this child in St. Elizabeth's Childrens Home, an appropriate boarding school facility in the uptown area of New Orleans, Louisiana. It is the court's opinion that this facility would satisfy all of the requirements for the proper placement of this child consistent with the views expressed hereinabove."
In upsetting the temporary custody arrangement of the juvenile court, the majority has failed to give full recognition to the main features of this proceeding. As custodian, the mother was tutrix of the child. LSA-C.C. Art. 157, as amended. Upon adjudication, the status of the child as a ward of the court became fixed. 43 C.J.S. Infants § 101, p. 263. Hence, the court was authorized to take custodial action. The temporary custody arrangement adopted by the juvenile court judge was designed to protect the child and, at the same time, permit the trained court staff to work toward returning the child to her mother. The majority, in my opinion, has erred in treating the proceeding only as a contest for custody between St. Elizabeth's Childrens Home and the father.
For the reasons assigned, I respectfully dissent.
NOTES
[1] On October 24, 1968, the Orleans Parish Juvenile Court rendered judgment placing the minor in St. Elizabeth's Childrens Home. After motion for new trial, filed October 29, 1967, the court amended its judgment, November 4, 1968, by placing the custody of the minor Barbara Christopher Thoman with the Department of Public Welfare and ordered that said Department place her in said Home.
[2] The evidence reflects that Helen Ruth drank during her marriage to Thoman.
[3] Mr. Henican is an attorney, who had previously been contacted by Helen Ruth with respect to legal matters.
[4] After trial, a written report was submitted by the Jefferson County Department of Pensions and Security, Birmingham, Alabama, to the Orleans Parish Juvenile Court. Although this report is not officially a part of the record, we have read it and find that it substantiates Mrs. Williams' testimony. It affirms the warm personality of Mrs. Katherine Thoman and her ability to handle children. It recites the ability of Mr. and Mrs. Thoman to care for Barbara.
[5] The report mentioned in Footnote 4 sets forth in detail Mrs. Katherine Thoman's awareness of the problems facing her. She is prepared to meet them and will secure help if needed.