380 So.2d 208 (1980)
Kay Renee Maytorena Bordelon JUNEAU, Plaintiff & Appellee,
v.
Holland BORDELON and Virginia Guillot Bordelon, Defendants & Appellants.
No. 7411.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1980.
*209 Harold J. Brouillette, Marksville, for defendants and appellants.
Nelson M. Lee, Bunkie, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
CULPEPPER, Judge.
This is one of three consolidated cases involving the custody and tutorship of a six year old child, Michael Frank Bordelon, Jr. The present suit is by the natural mother, Kay Renee Maytorena Bordelon Juneau, against the paternal grandparents, Holland Bordelon and Virginia Guillot Bordelon, seeking a writ of habeas corpus ordering defendants to deliver custody to the plaintiff. The second suit, entitled "Michael F. Bordelon v. Kay Maytorena Bordelon", 380 So.2d 213 (3rd Cir. 1980), is a suit in which a judgment was rendered on August 19, 1975 granting the husband a divorce and awarding to him the permanent custody of the child. In that suit the mother filed a rule in 1979 alleging that the father had been killed in an accident and seeking permanent custody of the child, who was alleged to be in the physical custody of the paternal grandparents. In the third case, entitled "(Tutorship of Michael Frank Bordelon, Jr., a Minor), Kay Renee Maytorena Bordelon Juneau v. Holland Bordelon and Virginia Guillot Bordelon", 380 So.2d 214 (3rd Cir. 1980), the mother alleges that the father is deceased, and she seeks to be appointed natural tutrix. The three cases were consolidated for trial. The district judge awarded both custody and tutorship to the mother, hereafter Kay. The paternal grandparents appealed. Separate judgments are being rendered by us this date in each case.
The decisive issue is whether the trial judge erred in concluding that the child's best interests will be better served by awarding custody to the mother instead of to the paternal grandparents.
The facts are that at the age of 16 Kay married Michael F. Bordelon on October 4, 1972. The child at issue was born of this marriage on August 7, 1973. On November 26, 1974, Michael and Kay were legally separated and custody was awarded to Kay. On December 9, 1974, Kay gave physical custody to the paternal grandparents through Judge Earl Edwards. On August 19, 1975, Michael was awarded a divorce and custody. Kay married her present husband, Jerry Juneau, on October 29, 1976. On March 9, 1979, Michael was killed in an accident. On March 14, 1979, Kay filed the present suit against the paternal grandparents for a writ of habeas corpus, and on the same date she filed the suit to be appointed natural tutrix. The trial was on March 27, 1979.
In determining the issues of custody and tutorship, the trial judge applied the principles recently enumerated by this Court in the case of Tolar v. Cunningham, 368 So.2d 1188 (3rd Cir. 1979) wherein the Court stated:
"... when parents compete with non-parents for custody of a child, `the parent's right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights.' ... [and] the non-parent had the heavy burden of showing the disqualification and unfitness of the parent. Hence, it can be seen that, without lessening the effect and force of the `best interests of the child' test in a custody contest between a parent and non-parents, the Supreme Court recognizes a rebuttable presumption that the child's best interests are better served by awarding custody to the parent.

* * * * * *
"A parent has a paramount right to custody of his or her children. Wood *210 v. Beard, 290 So.2d 675, supra; In Re State in Interest of Thoman, 253 La. 496, 218 So.2d 571 (1969). From this parent right, the above mentioned presumption in favor of a parent in a custody contest with a non-parent arises. As noted earlier, this presumption in favor of the parent can be overcome only if the non-parent shows that the parent is unable to provide a home for the child, is unfit for custody or has abandoned the child. Wood v. Beard, supra."
The trial court also applied LSA-C.C. Article 250, which provides:
Art. 250. Persons entitled to tutorship
Art. 250. Upon the death of either parent, the tutorship of minor children belongs of right to the other. Upon divorce or judicial separation from bed and board of parents, the tutorship of each minor child belongs of right to the parent under whose care he or she has been placed or to whose care he or she has been entrusted.
All those cases are called tutorship by nature.
In excellent reasons for judgment, the trial judge gave the following analysis of these rules, in light of the facts of this case:
"First, the Court addresses itself to the ability of Kay Maytorena Bordelon Juneau to provide a home for Michael Frank Bordelon, Jr. The evidence adduced would indicate that she does have that ability. The home seems to have all the modern conveniences. Mr. and Mrs. Juneau, Kay's in-laws live next door. Jerry Juneau, Kay's husband, since 1976, makes $300, more or less, clear every week. They pay no rent, since the home that they live in belongs to Jerry's parents. Jerry Juneau testified that he is very interested in making a home for Kay's child, Michael and would most probably adopt him.
"Second, the Court must look at the fitness of Kay Maytorena Bordelon Juneau. This probably is the most disputed issue brought out in the trial. Kay was born with a low I.Q. (Dr. Dyker, a clinical psychologist, testified that from his tests, Kay's I.Q. appeared to be approximately 75). The testimony seemed to indicate that she is a `slow learner', slightly above `mildly mentally retarded' on the intelligence scale. This was just one of her problems. She was also raised by a mother who, by her own testimony was an alcoholic. She also married very young and her marriage became very unhappy and ended in a divorce. During the time when she was separated from her husband, she attempted suicide by taking an overdose of a prescribed drug. She was admitted to Central Louisiana Hospital on March 7, 1975, and was released on March 26, 1975. After her release, she attended the Mental Health Clinic in Pineville, Louisiana.
"After a careful review of her hospital records, together with two letters from Dr. Charles L. Saint, Psychiatrist, (one written on June 10, 1975 and one written February 9, 1977) and after hearing the testimony of Dr. Dyker, a clinical psychologist, the Court feels that Kay Maytorena Bordelon Juneau has made remarkable emotional progress since March of 1975. A supportive husband and a good marriage seems to have made a big difference in her emotional stability. The Court was able to view Kay under what is usually a stressful situation for most people, that is on the witness stand, under oath, and under cross-examination. The Court feels that she handled that situation with no trouble. The testimony also brought out another stressful situation. Her child born of her marriage with Jerry Juneau, was born with a very serious heart problem. The child had to have open heart surgery at the age of 2 months. The testimony indicated that she handled that stressful situation with no apparent difficulty. She also has to administer medicine to her baby twice a day and she seems able to manage that. From a physical, psychological and emotional standpoint, the Court feels that, Kay Maytorena Bordelon Juneau is fit for custody.
"There was testimony given by two witnesses, Colleen and Thomas LaCombe.

*211 Thomas testified that he had once purchased three lids of marijuana from Jerry Juneau. Colleen testified that she was present at a trailer belonging to Donnie LaBorde and Richard Scallan, when Jerry and Kay came in. Jerry then sold Richard Scallan a gram of PCP. Colleen testified that she had seen Kay at Kyrle's Club one time and her eyes were red and she appeared to have been smoking Marijuana. These are allegations of a criminal nature and certainly Jerry Juneau has the right to be presumed innocent of these allegations and he also has the right to remain silent. However, it is the welfare of the child, Michael Frank Bordelon, Jr., that the Court must consider. Their testimony is certainly worrisome to the Court. It is a proven fact that in homes where parents use drugs, children usually get neglected. There was no real evidence, however to show that either Jerry or Kay used drugs.
"The Court also feels that Jerry Juneau does not seem to fit the mold of a drug pusher. He gets up early every morning and drives to Lafayette, Louisiana, and works 8 hours a day as a carpenter and he has been doing that for over two years. After careful consideration and, with some reservation, the Court feels that Kay Maytorena Bordelon Juneau is morally fit for custody.
"This, the Court must consider, whether or not Kay Maytorena Bordelon Juneau has abandoned the child. It is true that on December 9, 1974, Kay voluntarily surrendered the child, Michael Frank Bordelon, Jr., to then Judge Earl Edwards who granted custody to defendants, Virginia and Holland Bordelon. At the time, this action was probably the best thing that could have happened to Michael Frank Bordelon, Jr. Kay was very young, just legally separated, and living with an alcoholic mother. The hospital records which were admitted into evidence shows that Kay voiced her feeling about wanting her child back many times. The two letters from Dr. Saint were written because of requests made by then Judge Earl Edwards. The Court feels that both letters were direct results of Kay Maytorena Bordelon Juneau asking Judge Earl Edwards for custody of her son, Michael Frank Bordelon, Jr. While the Court was not privileged to the conversations between Judge Edwards and Kay, it assumes that Judge Edwards advised Kay not to try to regain custody until she was mentally and emotionally fit. The Court feels that her actions through the years from 1974 until the present time certainly do not indicate an intent to abandon the child, Michael Frank Bordelon, Jr."
On appeal, the paternal grandparents make serious and respectable arguments that the mother is unfit. They contend (1) that she filed these suits for custody and tutorship immediately after the father's death for the sole purpose of obtaining administration of the workmen's compensation benefits, social security benefits and any damages recoverable by the child, (2) that the mother abandoned the child in 1974 to the father and the paternal grandparents and then found employment as a bar maid and while so employed met and started living with and later married her present husband, Jerry Juneau, (3) that the mother attempted suicide by an overdose of pills, (4) that the mother was hospitalized and treated for emotional problems, (5) that both the mother and her present husband used and/or sold marijuana and a drug named "PCP", popularly known as "Angels Dust". The above quoted portion of the trial judge's written reasons shows that he carefully weighed the evidence on all of these contentions. Jurisprudence has established the rule that on appellate review of custody cases the findings of the trial judge are entitled to great weight. We rely on this rule in the present case.
For the reasons assigned, the judgment appealed in the present case is affirmed. All costs of this appeal are assessed against the appellants.
Affirmed.
STOKER, J., concurs and will assign written reasons.
*212 STOKER, Judge, concurring.
I concur in the majority opinion in this case and in the two cases with which it was consolidated. Nevertheless, I concur with reluctance and deep reservations. Indeed, the trial court also indicated that it decided this custody case with some reservations. The majority opinion quotes the reasons for judgment of the trial court. Those reasons discuss the very serious charges by two witnesses who accuse Jerry Juneau of dealing in drugs. One of these drugs, PCP commonly referred to as "Angel's Dust," raises a most alarming spectre. Jerry Juneau is the present husband of Kay Renee Maytorena Bordelon Juneau, the mother of six year old Michael Frank Bordelon, Jr. By the action of the trial court, and our affirmance of the trial court, this six year old son may be placed in the custody of a mother whose husband deals in illegal drugs. The fact that no evidence indicates that neither the mother nor Jerry Juneau are themselves users of drugs does not lessen my concern.
The trial judge who heard and observed the witnesses, who was, therefore, in a better position than we are to assess the character of Kay Juneau and her husband, Jerry Juneau, resolved this matter in favor of the Juneaus. Despite my reluctance to do so, I feel that I have no course here other than to accept the trial court's judgment in the matter.
It is unfortunate that this custody issue comes before us in the context of an adversary proceeding between the two sides seeking custody. No independent agency is involved.[1] Certainly Kay Juneau has the right to have these cases decided in adversary proceedings. Nevertheless, the facts are such as to recommend the continued scrutiny of the matter by the trial court and all agencies and authorities concerned with child welfare.
Inasmuch as I am filing this separate concurring opinion applicable to this case, I feel impelled to comment on the case of Tolar v. Cunningham, 368 So.2d 1188 (La. App. 3rd Cir. 1979), cited and quoted in the majority opinion. As author of the Tolar case, I feel especially called upon to say that, while Tolar correctly states the law, the principles reiterated in Tolar should not, in my opinion, override the facts and circumstances in every case. The facts and circumstances of the Tolar case bear no resemblance to those before us here. Without reviewing the facts of the Tolar case, it may be simply said that the rule applied in Tolar was properly applied considering the facts of that case.
The portion from Tolar quoted by the majority was based on the decision of the Louisiana Supreme Court in the case of Wood v. Beard, 290 So.2d 675 (La.1974) and In re State in the Interest of Thoman, 253 La. 496, 218 So.2d 571 (1969). In the Wood case the Supreme Court found that a mother who had been sentenced to a one-year jail term in California for the crime of assault was not, by that fact alone, to be considered an unfit mother. More important, however, is the fact that the Supreme Court made it clear that the courts may, and should, inquire into the fitness of a parent seeking custody where physical custody is in non-parents. From Wood v. Beard itself, it is clear that in contests between parents and non-parents over the custody of a child the courts are not inexorably required to award custody to the parent regardless of the parent's fitness. The Supreme Court in Wood said:
The district court may do more than inquire into the parentage of the child in a habeas corpus action, but should order the child "placed in the custody of a proper person." C.C.P. 3830. To order a child placed in the custody of a parent who is not "a proper person" would be to ignore the welfare of the child. The welfare of the child, and not simply the enforcement of a parental right to the possession of the child, is of primary concern to the court. It is consequently appropriate *213 that the district court inquire, when the issue is raised, whether the parent is unfit or unable to care for the child.
In Tolar we said of Wood that "the Supreme Court recognizes a rebuttable presumption that the child's best interests are better served by awarding custody to the parent." It should be emphasized that the presumption is rebuttable.
My feelings are that the accusations against Jerry Juneau are so serious that, if believed, they conceivably could justify a decision different from that which was made by the district court. The distribution of the "Angel's Dust" was made in Kay Juneau's presence according to the witness who testified. However, in support of the district judge, it should be noted that the accusing witnesses do not themselves have impeccable records. Both had been involved with drugs. One was on probation from a sentence for possession of marijuana, and the other had undergone treatment for drug abuse twice at Central Louisiana State Hospital. In addition, one witness was the nephew of the paternal grandmother, Virginia Bordelon, and the other was dating Michael Bordelon when he was killed. Consequently, the credibility evaluation made by the trial judge was not without basis. There is no justification for reversing his decision on this issue of fact. Canter v. Koerhing Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, despite my doubts or reservations, we must defer to the district court which resolved these three cases in favor of Kay Maytorena Bordelon Juneau, especially since the trial court itself considered this particular issue and gave strong written reasons for its decision.
NOTES
[1] Originally, when custody was given to Kay Juneau on November 22, 1974, custody was granted to her with the stipulation among others, that she exercise her custody under observation of a social welfare worker.