427 So.2d 891 (1983)
In the Interest of Maggie BOUDREAUX, et al.
No. 82 CJ 0063.
Court of Appeal of Louisiana, First Circuit.
January 20, 1983.
Writ Denied March 18, 1983.
*892 Jerome J. Barbera, III, Asst. Dist. Atty., Thibodaux, for the State of Louisiana.
John Weimer, III, Thibodaux, for Mr. and Mrs. Wonit Boudreaux.
Leslie J. Clement, Jr., Thibodaux, for the Juvenile Maggie Boudreaux.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
Wonit and Alberta Boudreaux, the natural parents of the minor child, Maggie Boudreaux, suspensively appeal the judgment of the trial court which terminated their parental rights in the child and granted custody of Maggie to her foster parents, Johnie and Hazel Freeman.
This matter came before the lower court on the petition of the State of Louisiana in the interest of the minor child, Maggie Boudreaux, filed on August 3, 1981, to have custody transferred from the State to Johnie and Hazel Freeman, the child's foster parents, and by amended petition to have the parental rights of the natural parents terminated on the grounds that Maggie was a neglected child and that the parents were unfit to rear the child. The petition, as amended, also averred that "it would not be in the best interest of the child to be reunited with her parents." The natural parents opposed the State's action.
At the time of the trial, Maggie was nine years old, having been born May 7, 1972. She has been in the custody of the State in the foster care of Mrs. Freeman since infancy, having been placed in the foster home when she was three months old. This placement came about through the following set of facts:
Acting upon complaint of a neighbor, sheriff's deputies of Lafourche Parish entered the house of Wonit Boudreaux and Alberta Rivet (now, Boudreaux) in Valentine, Louisiana. The complaint alleged that there were children in the house who were neglected and not attended to by an adult. When the law enforcement officers arrived at the Boudreaux house at approximately 2:00 a.m. on August 2, 1972, they found no adult in the house. Nine children, ranging in age from three months (Maggie) to ten years, were alone in the house, eight of whom were children of Mr. Boudreaux's marriage to Betty Babin Boudreaux. Only Maggie was the child of Wonit and Alberts. The deputies found Maggie Boudreaux in such a neglected state or condition that she required hospitalization. One of the other children had "burns over her body" and also had to be hospitalized. At the time the natural parents were living in what was described as a "non-legal union" and "raising" nine or ten children[1], including Maggie, *893 in a small, sparsely-furnished, roach-infested "plantation quarters," with the children sleeping on a mattress on the floor. There was no food in the house, and the children were crying. When the sheriff's office finally located the natural parents, they were found in a Lockport bar.
By an order of court dated August 2, 1972, the children were taken into the protective custody of the court and placed in the custody of the State of Louisiana through the Department of Public Welfare. All of the children, including Maggie, were eventually placed in licensed foster homes.
Ultimately the Department of Health and Human Resources (formerly, Department of Public Welfare) filed the present proceeding to transfer custody of Maggie to Mr. and Mrs. Freeman, and to terminate Mr. and Mrs. Boudreaux's parental rights under the provisions of LSA-R.S. 13:1601 B and D. The trial court, sitting as a Juvenile Court, heard the matter, and after a lengthy hearing transferred custody of Maggie Boudreaux to Mr. and Mrs. Freeman, and terminated the parental rights of Mr. and Mrs. Boudreaux.
In seeking reversal of the decision of the trial court, sitting as a juvenile court, the appellants set forth three principal assignments of error, viz:
1. The juvenile court was without jurisdiction of the subject matter because the child was not neglected or abused or delinquent at the time of the hearing on termination of parental rights and custody.
2. The juvenile court erred in terminating the parental rights of the natural parents pursuant to LSA-R.S. 13:1601 because under subsection D(1) the requisite judicial order was invalid since it was issued ex parte and the subsequent formal hearing was not held. As a result, appellants contend, the initial order of the court taking the child, Maggie Boudreaux, into protective custody as a ward of the court was violative of their right to due process as set forth in Article 1 Section 2 of the Louisiana Constitution of 1974.
3. The juvenile court erred in applying "the best interest of the child" test in awarding custody of the child to the foster parents over the objection of the natural parents.

1.
The appellants contend that the lower court was without jurisdiction of the subject matter to hear this proceeding sitting as a juvenile court, and that their peremptory exception should have been sustained. There is no merit in this contention.
The proceedings for termination of parental rights were brought under LSA-R.S. 13:1601 B and 13:1601 D. The introductory paragraph to 13:1601 clearly contemplates proceedings brought thereunder are to be brought in juvenile court, as can be seen from a reading thereof:
"The court or the district attorney may petition for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section."
Moreover, the juvenile court has jurisdiction to hear proceedings to award custody and to terminate parental rights under LSA-R.S. 13:1570A(1), which, together with the introductory paragraph, reads as follows:
"Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
"A. Concerning any child whose domicile is within the parish or who is found within the parish:
"(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his wellbeing; or who is abandoned by his parent or other custodian; or who is otherwise without proper care, custody, or support; or who is a live born human being, as defined in R.S. *894 13:1569(16)(e), who survives and is not killed in an abortion attempt."
The very basis of the State's complaint is that Maggie was left, unattended by an adult, without proper care or nourishment, and obviously neglected. The jurisdictional provision contemplates the existence of just such a condition at the time when the natural parents had de facto custody, before the jurisdiction of the juvenile court attached. Here, as we have stated, the basis of the State's complaint was that Maggie was found neglected and virtually abandoned by her natural parents, and left without proper care. We hold that the juvenile court had jurisdiction to determine whether or not that was true in fact, as alleged.

2.
The appellants secondly contend that the trial court erred in terminating their parental rights. The termination of parental rights is governed by LSA-R.S. 13:1601, and the State submits that the authority to terminate the parental rights in this case is furnished by R.S. 13:1601 D. It will be noted in rereading the introductory paragraph to 13:1601 (set forth above) that all of the conditions of each of the various subsections must be met. The conditions imposed by Subsection D. are as follows:
"D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
"(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
"(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
"(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents."
The appellants argue principally that the "judicial order" required by Subsection D(1) must be a valid judicial order, and since they were never given notice of a hearing either prior to or subsequent to the ex parte order dated August 2, 1972, that the said order was void ab initio.
The record is devoid of pleadings or evidence which would indicate that the Boudreauxs were given notice of a hearing, and the State concedes that they were never given notice, nor was a hearing held to which they were a party, nor for that matter, was a formal hearing held at all. Appellants contend, therefore, that they were deprived of their rights to due process of law guaranteed to them by the Constitution of the United States and the State of Louisiana.
The Juvenile Court had the authority under LSA-R.S. 14:403G(6) in view of the deplorable condition the child was in to issue the ex parte order taking her into the protective custody of the court and placing her in the custody of the State through its Child Welfare Division of the Department of Public Welfare. Although through administrative error the formal hearing required by statute was not subsequently held, the Boudreauxs were in fact immediately informed of the proceedings and reasons therefor in which the ten children, including Maggie Boudreaux, had been taken into the protective custody of the Juvenile Court, and there was frequent and open communication between them and the State agency. The record does clearly support the conclusion that Wonit and Alberta Boudreaux were simply not at the time of removal in 1972 capable of taking care of and providing for the needs of Maggie and the other nine children. And, notwithstanding the efforts of the State agency directed towards rehabilitation and the ultimate return of their child, they were never able to develop to a point where they could effectively cope with the responsibilities and stresses of raising children. The testimony of Mr. Rouen, the experienced social worker who handled this case for the entire nine year period, was to the effect that *895 while the Boudreauxs as parents were obviously disappointed by the removal of Maggie and the other children, they did not object to it as strenuously as in most of the cases with which he was familiar. Mr. Rouen testified that the Boudreauxs were cooperative and they were in contact with the State agency consistently from the initial removal of custody in 1972 to the present time. The Boudreauxs testified they never legally attempted to obtain the custody of Maggie because they believed that in due course she would be returned to them by the State. In response to the question of his attorney, "Why didn't you ever attempt to get Maggie back?", Mr. Boudreaux answered, "Well, we didn't realize that it was going to go this far, you know." Mrs. Boudreaux also testified to the same effect.
Nine years have elapsed since the State had removed custody of Maggie from her parents, and they had never attempted to seek legal counsel or assistance to obtain her return. The present proceeding was initiated by the State agency for the reasons of the permanent best interest of the child. The record shows that Mr. and Mrs. Boudreaux knew of the order. About one year after the removal of Maggie and the other children in August of 1972, Mrs. Boudreaux consulted and retained a lawyer to obtain a divorce from her former husband, Mr. Rivet. Yet, neither she nor Mr. Boudreaux made any effort to have the child returned to their custody. Mrs. Boudreaux testified she did not discuss with her lawyer the possibility of obtaining the return of Maggie to her custody.
We believe that it is evident from the record of this proceeding detailing the history of Wonit and Alberta Boudreaux and their child, Maggie, from shortly after her birth in 1972 that Mr. and Mrs. Boudreaux acquiesced for nine years in the order of Court placing the custody of Maggie in the State, and in view of the solicitous attitude of the State agency towards these parents as well as the child, we do not find any merit to the contention of Mr. and Mrs. Boudreaux that because the initial proceeding was technically flawed due to the failure of the State to convene the formal hearing required by law, that they were "deprived of the love, affection and companionship of their child for nine years" without due process.
Appellants further contend that conditions prescribed in Subsection D(2) of R.S. 13:1601 was not met for the reasons that the judicial order removing custody, as discussed above, was invalid and that the evidence relative to whether Maggie was neglected or abused at the time she was removed from the custody of the Boudreauxs is much in dispute. We have found, as stated above, that the order of the Court dated August 3, 1972 was valid under the provisions of LSA-R.S. 14:403G(6), and that it was issued because Maggie and the other children were found by the authorities in a situation of gross neglect. Nor do we find the evidence relative to neglect to be in dispute. Maggie was the youngest of nine children in the home at about two o'clock in the morning, with the oldest child, who was mildly mentally retarded being ten years old. There was practically no food or bedding, the parents were not home and there was no adult or even teen age supervision. We are convinced that the record, therefore, clearly establishes that Maggie Boudreaux was being seriously neglected by her parents at the time she was taken into protective custody of the court.
Appellants further contend that the conditions prescribed in Subsections D(3) and D(4) of R.S. 13:1601 have not been complied with by the State.
Subsection D(3) provides that in a termination proceeding it must be established that the parents are unfit and there is no reasonable expectation of reformation on their part. The parents argue in effect, that while the conditions of their home and the parental care of Maggie and the other children may have been bad at the time of her removal in August 1972, their circumstances have improved substantially over the years and that they can now properly take care of Maggie. In support of this they point out that Mr. Boudreaux is a hard *896 working man, that he and Mrs. Boudreaux are good parents to their young son, Wonit, now three years old, and that their house is well kept. In many cases these factors would weigh heavily in favor of the fitness of the parents, but the underlying causes of the unfitness of the Boudreauxs are deeper and more complex. As a result the Juvenile Court found it necessary to look beyond the present condition of the Boudreaux's house and parental care of their young son, Wonit.
In order to prove that the natural parents were unfit the State offered the testimony of both lay and expert witnesses. The testimony showed a conscientious and thorough effort on the part of the State agency over the nine year period, not only to properly care for this child in a foster home setting, but just as importantly to work with the child's natural parents by counseling and other means in an effort to reform or rehabilitate them so that they could be reunited with their child.
Joseph C. Rouen, an experienced social worker who handled this case for the entire nine year period, testified at length in regard to the placement of Maggie and the other nine children of Mr. Boudreaux, and of the State agency's efforts through visitations of the Boudreauxs with the children, including Maggie, to maintain parental contact. In addition, Mr. Rouen visited with the Boudreauxs at least once a month during the first three years after placement for the primary purpose of counselling them in an effort to improve their abilities and circumstances as parents, directed towards reunion with the children. After three years of counselling and visitations, Mr. Rouen testified that the suitability of the Boudreaux's home and their parental capacity to have any of the children returned had not improved.
Ms. Nancy Rumage, a clinical child psychologist, testified in regard to her evaluations, on behalf of the State, of Mr. and Mrs. Boudreaux, Mrs. Freeman, the foster mother, and Maggie Boudreaux. After testing and evaluation she concluded that Mr. and Mrs. Boudreaux "have very limited emotional resources, and can't take stress" as a result of which they do not attempt to cope with pressure situations but avoid them by withdrawing or denying them. Ms. Rumage's expert testimony strongly supported the State's evaluation that the Boudreauxs, due to their inability to handle responsibilities and the consequent stress resulting therefrom and to adjust to new situations, were psychologically and de facto incapable of handling more than one child.
In view of the foregoing, the nine year history of this matter and the extreme difficulties experienced by Mrs. Boudreaux with her children of a prior marriage, we find that evidence amply supports the conclusion of the Juvenile Court that Mr. and Mrs. Boudreaux are unfit to retain parental control, and there is no reasonable expectation of reformation.
Our foregoing expressions indicate that the State has met the requirements of Subsection D(4) of R.S. 13:1601. The evidence established that Maggie was in circumstances of gross neglect in August 1972 when she was taken into the protective custody of the court. The record shows in detail the conscientious efforts of the State agency to maintain contact between the parents and child and to counsel with the parents in an attempt to develop and improve their ability to handle the needs of the child so that a reunion would be justified. Although the State's efforts towards rehabilitation of the parents did not meet with the success that would have permitted a reunion, it must be said that the evidence shows that the State agency was diligent, competent and professional in its handling of this difficult and complex case. We are impressed that the evidence also reflects on the part of the State a proper and deep concern for the best interests and welfare of the parents as well as of their child.
Finally, the State recommends that it would not be in the best interest of the child to be reunited with her parents. This recommendation is supported by the factual history of this matter, the opinion of the clinical psychologist and the evaluation of *897 the State's trained social workers and child welfare specialists.
We find, therefore, that the Juvenile Court's determination that the State has met the requirements of Subsection D(4) is correct.

3.
Thirdly, Mr. and Mrs. Boudreaux contend the Juvenile Court erred in applying "the best interest of child" test in awarding custody of the child to the foster parents over the objection of the natural parents, and in terminating their rights as parents.
In order to terminate parental rights in this case the State must have met all of the conditions of R.S. 13:1601(D). We are of the opinion, as set forth in Section 2. above, that all of the conditions prescribed by the statute have been established by the evidence.
Able counsel for appellants points out in brief that the Juvenile Court in its reasons for judgment stated:
"... the court feels that it would be in the best interest of Maggie that there be a termination of parental care."
It is true that in its oral reasons the Juvenile Court did make the quoted statement. In view of the fact that the evidence established that all of the conditions of R.S. 13:1601(D) had been met, it necessarily follows that the best interest of Maggie would be served by a termination of parental rights. Consequently this is the inference which should be drawn from the statement of the Court.
Finally, Mr. and Mrs. Boudreaux contend that the Juvenile Court erred in using the "best interest of the child" test in awarding the custody of Maggie to the foster parents. Appellants argue that since this is a contest for custody between parents and non-parents, appellees should be required to prove them unfit as parents, citing Wood v. Beard, 290 So.2d 675 (La.1974), and Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972). However, in the Wood case, the court held that the natural parents' right to custody is superior to that of non-parents, unless the natural parents are unable or unfit, having forfeited parental rights. In the Griffith case, the court held that the district court lacked jurisdiction to act in proceedings filed by a grandfather to have the mother declared unfit and her children neglected, but did possess jurisdiction to hear the habeas corpus proceeding filed by the mother against the grandfather questioning his legal right to detain her children. Neither case supports appellants' position.
The answer to appellants' contention is that the State did prove the natural parents unfit and thus unable to retain parental care, custody and control of the child, and once that determination was made the Juvenile Court was obviously precluded from awarding custody to the natural parents. It then became necessary for the court to decide whether the custody should remain with the State where it has been since August 1972 or whether the custody should be transferred, as the State seeks, to the foster parents.[2]
It is settled jurisprudence that in cases involving the custody of children the primary concern of the court is the welfare and best interest of the children, and this consideration must prevail over the parental right to custody in cases wherein the two principles conflict. In Re State ex rel. Thoman, 253 La. 496, 218 So.2d 571 (La. 1969). See Borras v. Falgoust, 285 So.2d 583 (La.App. 4th Cir.1973), writ denied 289 So.2d 161 (La.1974).
Appellants have also cited the recent case of Lapointe v. Menard, 412 So.2d 223 (La. App. 3rd Cir.1982). We do not find the holding or reasoning of this case in support *898 of appellants' contention. In Lapointe, a habeas corpus proceeding between a parent and non-parents, the court did not find the natural parent unfit. On the contrary, the court observed: "According to several witnesses who testified, including a social worker with the Office of Human Development, plaintiff (natural parent) now displays all of the characteristics of a good wife and mother and is now able to provide Ravis (the child in question) with a good home." Such is not the case here. In fact the evidence in the present case indicates just the opposite. Mr. and Mrs. Boudreaux are still unfit and unable to provide an acceptable home for the child, Maggie.
Maggie Boudreaux has been in the custody of the State and under the foster care of Mrs. Freeman since she was three months old, a period of approximately nine years. There has been a nine year separation from her natural parents, the first nine years of her life. These entire nine years have been spent with Mrs. Freeman, and a shorter period with Mr. Freeman. The evidence is clear and convincing that there is a very good parent-child relationship between the Freemans and Maggie. The Freemans are loving and responsible parents to Maggie; she feels secure with them, and as a result of her nine years' stay with them during the formative years, is closely bonded to them and regards them as her parents, although she is aware of the fact that Mr. and Mrs. Boudreaux are her natural parents. Ms. Rumage, the clinical child psychologist, testified that she found Maggie to be a generally well adjusted child, but was of the opinion that the transfer of custody "could be very damaging to her in terms of her emotional development," and could cause her to "develop serious feelings of rejection and desertion." Both Mr. Rouen and Ms. Rumage testified that in view of the unfitness of the natural parents, the length of time of the foster care with Mrs. Freeman, the stability of the foster home with Mr. and Mrs. Freeman, and the need for the child to have the security of a permanent home, it would, without doubt, in their opinion, serve the best interests of Maggie if she were to remain in the custody of the Freemans.
The Court cannot ignore the reality of the nine year relationship between Maggie and Mrs. Freeman. Ms. Rumage summarized the reason for her recommendation. She stated that great weight must be given to the length of foster care, "... But it is more than the length of the stay. It is that everything in her record shows that there has been a bonding with the Freemans. This is her family."
We are convinced, therefore, that the evidence in this case supports a finding that the best interests of the child, Maggie Boudreaux, will be served by transferring custody from the State to her foster parents, Johnie and Hazel Freeman. We find the ruling of the trial court to be correct.
The trial court properly awarded attorney's fees to the ad hoc attorney representing the Boudreauxs. LSA-R.S. 13:1602. We find that the ad hoc attorney for the Boudreauxs is entitled to an increase in attorney's fees for the additional time and expenses incurred preparing and arguing this appeal. Thus, that portion of the judgment making an award to the ad hoc attorney of the Boudreauxs is amended to increase the award to $5,645.17.
The trial court also awarded attorney's fees to the ad hoc attorney representing the minor, Maggie Boudreaux. The attorney for Maggie Boudreaux did not orally argue the case on appeal and additional costs do not appear to have been incurred on appeal. Therefore, we affirm the trial court's award of $1,462.50 to the ad hoc attorney for Maggie Boudreaux.
In light of the foregoing, and due to the great discretion accorded the trial judge in such matters, the judgment appealed is affirmed, as amended, at the appellants' cost.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] One of the children of Mr. Boudreaux by a former marriage was being raised by a neighbor.
[2] We note that this is not a contest for custody between parents and non-parents, as appellants incorrectly contend. This proceeding is before the court on the petition of the State of Louisiana seeking a transfer of custody from the State to the child's foster parents, and also seeking a termination of parental rights. The natural parents oppose the transfer of custody and by reconventional demand seek to have the custody of the child awarded to them. Thus, the proceeding involves the State of Louisiana as the moving party, the foster parents and the natural parents.